**ST. PAUL FIRE AND MARINE INSUR-ANCE CO., a Minnesota corporation, Appellant (Defendant),**

**Hartford Accident and Indemnity Company, a Connecticut corporation; and C.R. Motis Insurance Agency, Inc., a Wyoming corporation, (Defendants),**

v.

**ALBANY COUNTY SCHOOL DISTRICT NO. 1, Appellee (Plaintiff).**

No. 87–88.

Supreme Court of Wyoming.

Nov. 4, 1988.

---

**1256**

Dan B. Riggs and Haultain E. Corbett of Lonabaugh and Riggs, Sheridan, for appellant.

Paul D. Schierer of Pence & MacMillan, Laramie, for appellee.

Before THOMAS, CARDINE, URBIGKIT and MACY, JJ., and GUTHRIE, J., Retired.

MACY, Justice.

Appellant St. Paul Fire and Marine Insurance Co. (St. Paul) appeals from a summary judgment in favor of appellee Albany County School District No. 1 (School District) in a declaratory judgment action construing an insurance policy. The district court declared that the liability insurance policy provided coverage for payment of a judgment rendered against the School District.

We reverse.

St. Paul presents three issues for our consideration:

1. Does the St. Paul Insurance Policy provide coverage to Albany County School District No. 1 for the claims asserted against it by Dennis Diehl?

2. Do the doctrines of waiver and estoppel or "reasonable expectations" operate to preclude St. Paul from denying insurance coverage to Albany County School District No. 1 for the claims asserted against it by Dennis Diehl?

3. Did the District Court err in granting Summary Judgment for the School District as against St. Paul, and in denying Summary Judgment for St. Paul as against the School District?

On February 7, 1985, an employee of the School District, Dennis Diehl, filed a civil rights action pursuant to 42 U.S.C. § 1983 against the School District in the United States District Court for the District of Wyoming. St. Paul, as one of the liability insurers for the School District, agreed to defend the suit while retaining its "full reservation of rights" with respect to coverage. On March 7, 1986, a jury verdict was rendered against the School District in the amount of $33,000, and judgment against the School District for that amount was entered on March 13, 1986.

Following entry of the judgment against the School District, St. Paul notified the School District that it was denying coverage and withdrawing its defense of the action. The School District, however, demanded that St. Paul prosecute an appeal. By letter dated May 8, 1986, St. Paul noti-

fied the School District that, while it continued to deny coverage and to maintain its reservation of rights, it would nevertheless provide further defense in the civil rights action for purposes of post-trial motions and appeal.

On May 9, 1986, the instant action was commenced when the School District filed a Petition for Declaratory Judgment and Complaint for Supplemental Relief in the district court. Named as defendants in this petition and complaint were: St. Paul; Hartford Accident and Indemnity Company (Hartford)—an insurer with whom the School District had additional liability insurance; and C.R. Motis Insurance Agency, Inc. (Motis)—the local agency that had arranged the purchases and renewals of the policies of both carriers for the School District. In the petition and complaint, the School District sought a judicial declaration that the loss incurred by the School District in the civil rights case was covered either by the policy of St. Paul or the policy of Hartford or by both policies and that both carriers had an obligation to defend, including any appeal. In addition, the School District alleged a breach of the duty of good faith and fair dealing against all defendants, including an alleged misrepresentation of policy coverage by Motis, applicable only if the district court found no coverage under the policies. In addition to the declaratory relief sought, the School District requested compensatory damages equal to the amount of the judgment against it and punitive damages on the bad faith claims, plus attorney fees, interest, and costs.

█ All defendants answered, and St. Paul counterclaimed for declaratory relief regarding the coverage of its policy. All parties then submitted motions for summary judgment with accompanying affidavits, exhibits, and memoranda. A hearing on the several motions was held on January 16, 1987. In its subsequent decision letter, the district court said that St. Paul had "lulled the School District into a justifiable belief that the Diehl firing would be a covered occurrence" and held that, "[w]hether on contract grounds, estoppel grounds, application of the doctrine of 'reasonable expec[ta]tions'—or just common sense, St. Paul Fire and Marine should pay the judgment." Anticipating appeal, the district court further determined that, should this Court disagree regarding the St. Paul policy coverage, the Hartford secondary coverage policy also covered the judgment against the School District, subject to a deductible. The district court additionally decided that, should this Court hold that neither policy covered the loss, a litigable issue would then exist with respect to the School District's bad faith/negligent misrepresentation claim against Motis. An order was entered granting summary judgment to the School District as against St. Paul and Hartford and denying the cross-motions of those defendants. In addition, the order denied the School District's motion for summary judgment against Motis, and Motis' cross-motion, because of the contingent negligence claim against Motis. Finally, the district court certified its order as a final judgment pursuant to W.R.C.P. 54(b) so that an appeal could be taken. St. Paul brought the instant appeal. Hartford did not appeal, and the order was not appealable as to Motis, because the denial of a motion for summary judgment is not an appealable order. *Kimbley v. City of Green River*, 663 P.2d 871 (Wyo.1983).[1]

A proper grant of summary judgment depends upon the dual findings that there are no genuine issues of material fact and that the prevailing party is entitled to judgment as a matter of law. *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One*, 763 P.2d 843 (Wyo.1988); *Whipple v. Northern Wyoming Community College Foundation of Sheridan*, 753 P.2d 1028 (Wyo.1988); *Farr v. Link*, 746 P.2d 431 (Wyo.1987). Where, as in this case, the facts are not in dispute and the questions presented are strictly ones of law, we ac-

---

1. As noted by St. Paul in its brief, since Hartford did not appeal, a decision by this Court in favor of St. Paul will not deprive the School District of insurance coverage for the judgment. The district court ruled that Hartford's policy provided coverage, subject to a deductible.

cord no special deference to and are not bound by the district court's decision. *Teton Plumbing and Heating, Inc.*, 763 P.2d 843; *Farr*, 746 P.2d 431; *State Board of Control v. Johnson Ranches, Inc.*, 605 P.2d 367 (Wyo.1980).

St. Paul's first issue concerns the coverage provided by the insurance policy issued to the School District. Resolution of this issue requires that we examine the policy and apply our established rules of interpretation and construction. An insurance policy is a contract, and the general rules of contract construction apply to insurance agreements. *State Farm Fire and Casualty Company v. Paulson*, 756 P.2d 764 (Wyo.1988); *Compass Insurance Company v. Cravens, Dargan and Company*, 748 P.2d 724 (Wyo.1988). The interpretation of a written contract is done by the court as a matter of law. *Ricci v. New Hampshire Insurance Company*, 721 P.2d 1081 (Wyo.1986); *Farrell v. Hursh Agency, Inc.*, 713 P.2d 1174 (Wyo.1986). An exception to construing insurance policies as other contracts has been observed by this Court where the language of the policy is ambiguous, in which case the policy must be strictly construed against the insurer. *Paulson*, 756 P.2d 764; *Worthington v. State*, 598 P.2d 796 (Wyo.1979). Ambiguity, however, is not generated by a subsequent disagreement between the parties as to the meaning of the policy. *Ricci*, 721 P.2d 1081; *Marcam Mortgage Corporation v. Black*, 686 P.2d 575 (Wyo.1984). Further, the language of an insurance policy will not be "tortured" in order to create an ambiguity. *Paulson*, 756 P.2d 764; *McKay v. Equitable Life Assurance Society of United States*, 421 P.2d 166 (Wyo. 1966).

If the policy language is clear and unambiguous, the rule of strict construction against the insurer does not apply, and the policy must be interpreted in accordance with the ordinary and usual meaning of its terms. *Paulson*, 756 P.2d 764; *Worthington*, 598 P.2d 796. The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy. *Worthington*, 598 P.2d 796; *State Farm Mutual Automobile Insurance Company v. Farmers Insurance Group*, 569 P.2d 1260 (Wyo.1977).

With the above precepts in mind, we look to the St. Paul policy issued to the School District to determine the issue of coverage. St. Paul contends that the policy is not ambiguous and that, in accordance with its terms, it does not cover the School District as an entity except to the extent that the School District is required to indemnify its employees or the individual members of the board of trustees. We agree.

The policy is entitled "BOARD OF EDUCATION LIABILITY POLICY Including School District Reimbursement." The coverage terms of the policy provide as follows:

I. COVERAGE

This Policy shall, subject to its terms, conditions and limitations, pay on behalf of:

A. INSUREDS' LIABILITY—The Insureds as defined in Insuring Agreement IIA for "Loss" as defined in Insuring Agreement IIB caused by any negligent act, any error, any omission or any breach of duty while acting in their capacity as such or any matter claimed against them solely by reason of their holding such designated positions.

B. SCHOOL DISTRICT INDEMNIFICATION—The school district named in Item 1 of the Declarations *for any amount it is required or permitted to pay as indemnity to any person insured under the applicable Coverage Plan* designated in Insuring Agreement IIA for "Loss" as defined in Insuring Agreement IIB because of claims made against such Insureds caused by any negligent act, any error, any omission or any breach of duty while acting in their capacity as such or any matter claimed against them solely by reason of their holding such designated positions.

(Emphasis added.) The School District selected a coverage plan under which "the insureds" were defined as follows:

## II. DEFINITIONS

A. Based upon the Coverage Plan designed by [X] under Item 4 of the Declarations the word "Insured" shall mean:

PLAN A—BROAD FORM—All persons who were, now are or shall be elected or appointed members of the Board of Education, Trustees or School Directors of the School District and shall also include all persons, who were, now are or shall be employed by the School District, including student teachers.

The School District asserts that coverage exists under the policy for the loss it suffered by the judgment rendered against it in the civil rights case. St. Paul, however, maintains that the policy did not insure the School District except to the extent the School District was required or permitted to indemnify school board members or school district employees; i.e., the named insureds. A reading of the above provisions convinces us that the terms of the policy sustain St. Paul's position.

■ The policy provisions respecting coverage and defining the insureds are not ambiguous. The policy provides liability coverage for loss, resulting from negligent acts, breach of duty, et cetera, for specifically designated individuals—members of the board of education, trustees or school directors of the School District, and all employees of the School District, including student teachers. The policy additionally provides coverage to the School District to the extent it is required or permitted to indemnify any of the insured persons named in the policy. This is the express limit of the School District's coverage under the policy. As pointed out by St. Paul, the judgment in the civil rights case was against the School District and not against the individual members of the board of trustees or School District employees. Neither the individual board members nor anyone else employed by the School District is personally liable for the judgment against the School District. Therefore, as correctly

argued by St. Paul, since the board members are not individually liable to satisfy the judgment against the School District, the School District has no need to indemnify those persons, and consequently the policy provides no coverage for the School District in this situation.

The School District, however, contends that an ambiguity is created by references in the title of the policy and in other related documents, including an endorsement, a renewal certificate, and a payment invoice, which indicate that the School District is an insured. St. Paul, on the other hand, argues that these designations do not create an ambiguity, because the School District is in fact an insured under the terms of the policy, but only to the extent that it may be required or permitted to indemnify "persons" covered by the policy. We agree with St. Paul in this respect, and further, in the face of the clear policy terms describing coverage, we will not strain or "torture" the language of the policy to create an ambiguity. *Paulson,* 756 P.2d 764.

The School District additionally relies on W.S. 21–3–111(a)(i) in making its ambiguity argument. We have said that laws in existence at the time and place of the making of a contract, and where it is to be performed, enter into the contract and become part of it as though they were expressly referred to and incorporated in its terms. *Tri–County Electric Association, Inc. v. City of Gillette,* 584 P.2d 995 (Wyo.1978); *Hagood v. Texas Pacific Coal and Oil Company,* 356 P.2d 135 (Wyo.1960). W.S. 21–3–111(a)(i) provides: "The board of trustees in each school district within the state may: (i) [s]ue and be sued in the name by which the district is designated." The School District argues that, since the School District and the board of trustees are essentially interchangeable for purposes of suit, a liability policy protecting individual board members is somehow transformed into a school district liability policy. This contention obviously cannot be sustained. The statute does not make each individual board member the equivalent of the board itself, and a judgment against the board or the district is not a

judgment against the individual board members. Correspondingly, an insurance policy covering board members individually is not transformed by operation of the statute into a policy covering a school district. The cited statute does not inject any ambiguity into the policy. We conclude, therefore, that the insurance policy was not ambiguous and that, pursuant to its terms, it did not provide coverage to the School District for the judgment against it in the underlying civil rights case.

■ The School District further asserts, however, that the interpretation of the policy urged by St. Paul and now adopted by this Court is against public policy. The School District premises this argument upon W.S. 1–39–104(b) of the Wyoming Governmental Claims Act as that section existed in relation to this claim. That section provided:

> When liability is alleged against any public employee, if the governmental entity determines he was acting within the scope of his duty, whether or not alleged to have been committed maliciously or fraudulently, the governmental entity shall provide a defense at its expense. A governmental entity shall save harmless, and indemnify its public employees against any tort claim or judgment arising out of an act or omission occurring within the scope of their duties.

The School District, in making this argument, additionally relies on a final sentence added to the statute by amendment in 1986.[2] The added sentence provides:

> At the time a judgment is rendered against a public employee pursuant to this subsection, the governmental entity shall assume the judgment.

The 1986 amendment, however, became effective after judgment was entered in the underlying civil rights case. 1986 Wyo. Sess. Laws ch. 19, sec. 2. Thus, the amendment is inapplicable with respect to the judgment against the School District.

The School District's argument, if we understand it correctly, is that, pursuant to the above statute, the School District is required to indemnify the board members for any claim or judgment rendered against them for their acts occurring within the scope of their duties, and therefore the School District, by purchasing a policy providing individual coverage to board members, who will in each instance be indemnified by the School District, is paying for a risk contingency that cannot occur. Further, the School District, relying on the language in the amendment, contends that, because the statute requires that any judgment rendered against a board member on a tort claim shall be assumed by the governmental entity, i.e., the School District, it must follow that any judgment against a board member is a judgment against the School District and that, under the terms of the policy as interpreted by St. Paul, the policy will never pay off. As a result, according to the School District, the policy as interpreted is contrary to public policy.

Although this is an artful and intriguing argument, we cannot agree that the statute defeats coverage under the insurance policy. Even assuming, arguendo, that the amendatory language of the statute was applicable, the statute, by requiring the governmental entity to assume the judgment, does not convert a judgment against a public employee into a judgment against the governmental entity. The governmental entity is simply required to indemnify the employee, and the subject insurance policy in this case would cover the School District in that situation. Additionally, we perceive that the insurance policy provides broader protection to a board member than does the statutorily mandated indemnification. The policy does not contain the "scope of his duty" limitation found in the statute nor is the policy expressly limited to tort claims as is the statute. It seems to us that the policy is tailor-made to cover the risks to the School District that are inherent in the mandatory indemnification requirements of the statute and to guarantee to board members and district employees that they will have coverage regardless of whether the School District is required

2. W.S. 1–39–104(b) was further amended in 1988, effective as of June 9, 1988.

to indemnify them. The policy as interpreted is not against public policy.

St. Paul, in its second issue, argues that the district court erred to the extent that it relied on the grounds of estoppel and waiver or the doctrine of reasonable expectations to overcome the clear terms of the insurance policy and to enter judgment for the School District. We agree.

■ We first address the estoppel and waiver claims as asserted by the School District in the action below and reiterated before this Court. These claims are premised on certain acts or omissions of Motis as the representative of St. Paul (the estoppel claim) and of St. Paul itself (the waiver claim). On May 27, 1983, Motis sent a letter to Leonard Hall, the School District's assistant superintendent for business services, regarding coverage under the St. Paul and Hartford policies. The letter stated in part:

> As per our telephone conversation on Monday of this week, please be advised of the following as cla[ri]fication on the questions that were raised concerning the coverages: ,
>
> * * *
>
> St. Paul Policy # 583JJ8503
>
> This policy names as an insured in the declarations page, Albany County School District # 1. Too, the individual board members are provided the protection as respects their exposure while serving in their capacity as board members.

The School District contends that this letter contained misrepresentations of coverage, on which it relied to its detriment, and that therefore St. Paul should be estopped from denying coverage. St. Paul, however, urges that the School District is an insured under the policy, but only to the extent described, and that consequently the letter is not misrepresentative. St. Paul further suggests that the question of the letter's alleged misrepresentation is a contingent question of material fact not properly before this Court, as demonstrated by the district court's denial of the cross-motions for summary judgment between the School District and Motis. We agree that the alleged misrepresentative nature of the letter is a factual question, but we further agree with St. Paul that the question is immaterial in resolving the issue of whether St. Paul is estopped from denying coverage.

In the case of *Sowers v. Iowa Home Mutual Casualty Insurance Company*, 359 P.2d 488 (Wyo.1961), the insured made estoppel and waiver arguments against the insurer on the basis of representations that had been made by the insurer's agent. In that case we held, citing extensive authority, that conditions going to coverage could not be extended by acts of the insurer or its agent under the doctrines of estoppel and waiver. In stating this rule, we quoted "16 Appleman, Insurance Law and Practice, pp. 629, 630 (1944)" at length, including the following passages:

> "It has been broadly stated that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. * * * [U]nder no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel. * * *
>
> "While a for[ ]feiture of benefits contracted for in an insurance policy may be waived, the doctrine of waiver or estoppel cannot create a liability for benefits not contracted for. Nor may a contract, under the guise of waiver, be reformed to create a liability for a condition specifically excluded by the specific terms of the policy. * * *
>
> "The doctrine of implied waiver or estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms or that are expressly excluded therefrom * * *."

*Sowers*, 359 P.2d at 493. We have applied this principle in the more recent cases of *Ricci*, 721 P.2d 1081, and *Tadday v. National Aviation Underwriters*, 660 P.2d 1148 (Wyo.1983). See also *State Farm Mutual Automobile Insurance Company v. Petsch*, 261 F.2d 331 (10th Cir.1958) (insurer's agent's express representation to insured that policy fully protected the insured against an employee's claim did not

estop the insurer from denying coverage where it was plainly excluded by the policy); and 16B J.A. Appleman and J. Appleman, Insurance Law and Practice § 9090 (1981) (reciting and describing the general rule). In the instant case, St. Paul is not trying to claim a forfeiture of existing coverage, a situation in which waiver and estoppel may apply, but, rather, St. Paul is simply asserting that coverage never existed. We have previously determined that the policy did not cover the School District in this case. Therefore, in accordance with the cited cases, the coverage afforded by the policy cannot be expanded by estoppel or waiver on the basis of the representations of Motis.

 The above principle is equally applicable to the School District's contention that St. Paul waived its coverage defense by failing to raise the defense in its initial response to the claim. In a letter to the School District dated March 8, 1985, St. Paul advised that it conditionally agreed to provide a defense for the School District in the underlying case. In this letter St. Paul also stated: "Furthermore we have advised you that The St. Paul is reserving all its rights as to the issues of coverage * * * under the terms and conditions of your policy." St. Paul, in this letter, further advised the School District of several possible grounds upon which it might deny coverage, stating that, "in the event that a judgment is rendered against the Albany County School District No. 1 which is based upon non-covered or exclud[ed] grounds, including but not limited to the foregoing, the judgment will not be paid by The St. Paul." Waiver is the intentional relinquishment of a known right manifested in an unequivocal manner. *Baldwin v. Dube*, 751 P.2d 388 (Wyo.1988). It is readily apparent from the letter that St. Paul did not intentionally relinquish a known right by failing to specify the coverage defense. St. Paul's agreement to accept the defense of the case with "a full reservation of rights" negates any intent to waive any objection to coverage. In any event, the principle that the doctrines of estoppel and waiver cannot be employed to expand policy coverage is controlling. *Sowers*, 359 P.2d 488.

See also *State Farm Mutual Automobile Insurance Company v. Hartford Accident & Indemnity Company*, 646 S.W.2d 379 (Mo.App.1983) (coverage not included in a policy may not be included upon the basis of waiver or estoppel for failure to timely assert that defense); and *Insurance Company of North America v. Coffman*, 52 Md.App. 732, 451 A.2d 952 (1982) (defenses founded upon lack of basic coverage may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company). The reliance by the district court upon the doctrines of estoppel and waiver in finding coverage for the School District was misplaced.

The district court, in its decision letter, also referred to the doctrine of reasonable expectations as justifying its decision in favor of the School District. St. Paul argues, however, and the School District concedes, that this Court has never expressly adopted that doctrine.

 The doctrine of reasonable expectations is essentially a rule of construction that acknowledges the usual disparity of bargaining power between an insurer and the insured and the fact that insurance contracts are generally contracts of adhesion. See *Corgatelli v. Globe Life & Accident Insurance Company*, 96 Idaho 616, 533 P.2d 737 (1975), wherein the Idaho Supreme Court described the doctrine and applied it in a split decision, and *Casey v. Highlands Insurance Company*, 100 Idaho 505, 600 P.2d 1387 (1979), in which that same court disavowed and refused to adopt the doctrine. Under the doctrine, "the court will uphold the insured's reasonable expectations as to the scope of coverage, provided that the expectations are objectively reasonable." 2 G. Couch, Cyclopedia of Insurance Law 2d § 15:16 at 172 (Rev. ed. 1984). Professor Keeton describes the operation of the doctrine in this fashion:

The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though

painstaking study of the policy provisions would have negated those expectations.

R. Keeton, Basic Text on Insurance Law § 6.3(a) at 351 (1971). Cases from other jurisdictions applying the doctrine include *Corgatelli*, 533 P.2d 737; *National Indemnity Company v. Flesher*, 469 P.2d 360 (Alaska 1970); and *Harr v. Allstate Insurance Company*, 54 N.J. 287, 255 A.2d 208 (1969).

██ The School District contends that, while this Court has never expressly adopted the doctrine, the underpinnings of the doctrine have been accepted by this Court as reflected in the cases of *Sinclair Oil Corporation v. Columbia Casualty Company*, 682 P.2d 975 (Wyo.1984), and *Wilson v. Hawkeye Casualty Co.*, 67 Wyo. 141, 215 P.2d 867 (1950). We agree that those cases, particularly Sinclair Oil Corporation, could be read as approving concepts embodied in the doctrine of reasonable expectations. We do not believe, however, that it is appropriate in the instant case to evaluate the merits of or adopt the doctrine. We have held that the policy in this case is clear and unambiguous with respect to coverage. A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous. We will not absolve the parties to an insurance policy from the duty to read the policy. Thus, we decline to adopt or apply the doctrine of reasonable expectations in this case, and we hold that it was error for the district court to rely upon this doctrine in finding policy coverage.[3]

In conclusion, we hold, as a matter of law, that under the terms of the insurance policy the School District was not afforded coverage for the judgment against it in the underlying case and further that the doctrines of estoppel and waiver cannot be employed to extend the policy coverage. Finally, we hold that this is not an appro-priate case in which to consider adopting or applying the doctrine of reasonable expectations. Accordingly, the grant of summary judgment in favor of the School District and against St. Paul is reversed. Our holding that, as a matter of law, the insurance policy does not cover the School District in this case effectively disposes of the controversy between these parties, and there is no need for further proceedings. Thus, it is appropriate for us to reverse and remand with instructions that summary judgment be entered in favor of St. Paul. See *Leithead v. American Colloid Company*, 721 P.2d 1059 (Wyo.1986).

Reversed and remanded for entry of summary judgment in favor of St. Paul.

---

**3.** In the context of the School District's reasonable expectations argument, we note the following provision located prominently in the policy renewal application signed and acknowledged by Leonard Hall on behalf of the School District in March of 1984:

5. Is it understood that the coverage provided the District applies only to its obligation to indemnify Board Members and district employees, and no coverage is provided for suits brought directly against the District? X Yes ___No