The CITY OF LARAMIE,
Wyoming, Petitioner,

v.

Greg T. FACER, as father and natural guardian of his son, Shane J. Facer, a minor, and on his own behalf, Respondent.

No. 90–54.

Supreme Court of Wyoming.

July 5, 1991.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, for petitioner.

William L. Combs, Harold F. Buck, Nicholas Vassallo of Buck Law Offices, Cheyenne, for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY, and GOLDEN, JJ.

URBIGKIT, Chief Justice.

By appellate review, we are asked whether participation by local governments in a pool fund pursuant to W.S. 1–39–118(c)(ii) constitutes a purchase of insurance which would waive governmental immunity under W.S. 1–39–118(b) constituting a section of the Wyoming Governmental Claims Act, W.S. 1–39–101 through 1–39–120, enacted in 1979.[1] We hold that the governmental unit pool fund creation and participation is not the purchase of liability insurance coverage and no waiver of governmental immunity under that insurance coverage exception results.

We reverse the decision of the district court that the City of Laramie's participation in a W.S. 1–39–118(c)(ii) pool fund constituted insurance purchase which extended the municipality's tort liability to include defect in the design, construction or maintenance of the city's streets.

## BACKGROUND

W.S. 1–39–104 provides immunity to governmental entities and employees for any tort except as waived by the Act. *Abelseth*

---

**1.** For a history of the Act and detailed comments about its provisions, see *State v. Stovall,* 648 P.2d 543 (Wyo.1982) and Comment, *Wyoming's Governmental Claims Act: Sovereign Immunity With Exceptions—A Statutory Analysis,* XV Land & Water L.Rev. 619 (1980). *See also White v. State,* 784 P.2d 1313 (Wyo.1989), Urbigkit, J., dissenting.

v. *City of Gillette,* 752 P.2d 430 (Wyo. 1988); *Hurst v. State,* 698 P.2d 1130 (Wyo. 1985). W.S. 1–39–118(a)[2] establishes the maximum liability for a governmental entity or employee, but under W.S. 1–39–118(b), permits the purchase of liability insurance. *Pickle v. Board of County Com'rs of County of Platte,* 764 P.2d 262 (Wyo.1988); *St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1,* 763 P.2d 1255 (Wyo.1988). The W.S. 1–39–118(b) purchase of liability insurance extends the governmental unit's liability to the extent covered within the liability insurance policy. *Pickle,* 764 P.2d 262. The Act

2. W.S. 1–39–118 provides:

(a) Except as provided in subsection (b) of this section, in any action under this act, the liability of the governmental entity, including a public employee while acting within the scope of his duties, shall not exceed:

(i) The sum of two hundred fifty thousand dollars ($250,000.00) to any claimant for any number of claims arising out of a single transaction or occurrence; or

(ii) The sum of five hundred thousand dollars ($500,000.00) for all claims of all claimants arising out of a single transaction or occurrence.

(b) A governmental entity is authorized to purchase liability insurance coverage covering any acts or risks including all or any portion of the risks provided under this act. Purchase of liability insurance coverage shall extend the governmental entity's liability as follows:

(i) If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage;

(ii) Notwithstanding paragraph (i) of this subsection, if a governmental entity acquires coverage in an amount greater than the limits specified in this section for the purpose of protecting itself against potential losses under a federal law and if the purpose of the coverage is stated as a part of or by an amendment to the insurance policy, the increased limits shall be applicable only to claims brought under the federal law.

(c) In addition to the procurement of insurance under subsection (b) of this section a local governmental entity may:

(i) Establish a self-insurance fund against the liability of the governmental entity and its officers and employees;

(ii) Join with other governmental entities, by joint powers agreements under W.S. 16–1–102 through 16–1–108, or otherwise, to pool funds and establish a self-insurance fund or jointly purchase insurance coverage. Pooled

waived immunity for negligent operation or maintenance of public facilities under W.S. 1–39–111, *State v. Stovall,* 648 P.2d 543 (Wyo.1982), until 1986 when the Wyoming legislature repealed this waiver and enacted W.S. 1–39–120, which provided:

(a) The liability imposed by W.S. 1–39–105 through 1–39–112 does not include liability for damages caused by:

(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;

(ii) The failure to construct or reconstruct any bridge, culvert, highway,

funds may be deposited with the state treasurer for disbursement as participating governmental entities direct or may be deposited as provided by the terms of the joint powers agreement;

(iii) Repealed by Laws 1981, ch. 142, § 2.

(iv) Pay the judgment or settlement, with interest thereon, in not to exceed ten (10) annual installments in cases of undue hardship and levy not to exceed one (1) mill per year on the assessed value of the governmental entity for such purpose;

(v) Enter into contracts with the purchasing and property control division of the department of administration and fiscal control for the payment of assessments by the local government in such amounts as determined by the division to be sufficient, on an actuarially sound basis, to cover:

(A) The potential liability, or any portion of potential liability, of the local government and its public employees as provided by this act;

(B) Costs of administration;

(C) Payment by the division of claims against the local government and its public employees acting within the scope of their duties which have been settled or reduced to final judgment.

(d) No judgment against a governmental entity shall include an award for exemplary or punitive damages, for interest prior to judgments or for attorney's fees.

(e) Except as hereafter provided, no judgment authorized by this act may be enforced by execution or attachment of property of a governmental entity but shall be paid only as authorized by this section and W.S. 1–39–113. A judgment authorized by this act may be enforced by execution or attachment of the property of a governmental entity to the extent coverage of the liability has not been obtained under subsection (b) or (c) of this section or W.S. 1–39–115 unless the judgment is otherwise satisfied by the governmental entity.

(f) [Property damage provision relating to damage in amounts less than $500.00.]

roadway, street, alley, sidewalk or parking area; or

(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area.

*See White v. State,* 784 P.2d 1313 (Wyo. 1989).

In 1986, Natrona County, Laramie County and the cities of Cheyenne, Wyoming and Laramie, Wyoming formed a joint powers agreement to create the Wyoming Association of Risk Management (WARM) under the authorization of W.S. 1–39–118(c)(ii) and the Wyoming Joint Powers Act, W.S. 16–1–102 through 16–1–108. Three years later in 1989, Greg T. Facer filed a personal injury suit against the City of Laramie as the father and natural guardian of his minor son, Shane J. Facer. The suit sought to recover for Shane's serious injury when his vehicle left the roadway and struck a city sign that had been placed at windshield height resulting in the sign shattering the windshield and causing his head injuries. The lawsuit was a claim of negligent design, construction, and maintenance. The City of Laramie, pursuant to W.R.C.P. 12(b)(6), moved to dismiss for the failure to state a claim upon which relief could be granted. The district court denied the motion in concluding that the City of Laramie had waived the immunity provided by W.S. 1–39–120 by purchasing insurance that provided coverage for "bodily injuries" without excluding liability for highway design. We granted a petition for a writ of certiorari to review this substantial issue of Wyoming municipality law.

---

**3.** Also, if W.S. 1–39–118(c)(ii) creates insurance, then it could be argued that the state is also operating an insurance fund through usage of the text of W.S. 1–39–118(c)(v) by conversion of a debt funding concept into an implied insurance arrangement provided by the state. Basic liability of both the governmental entity and the state fund would consequently be comprehensively extended.

**4.** A concise statement of a realistic and comprehensive statutory interpretation and application standard is provided in the case of *State v.*

## DISCUSSION

That issue addresses whether a governmental entity by participation in the pool fund arrangement through a joint powers agreement under W.S. 1–39–118(c)(ii) results in the purchase of insurance waiver of immunity under W.S. 1–39–118(b) (insurance waiver section). If W.S. 1–39–118(c)(ii) creates insurance, the scope of resulting liability under subsection (b) will then be determined by interpreting the joint powers agreement and its operational documents.[3] Conversely, if W.S. 1–39–118(c)(ii) is merely a funding mechanism to defray costs created by the exceptions to immunity under W.S. 1–39–105 through 1–39–112 or exclusion of immunity under federal law, specifically 42 U.S.C.A. § 1981, then liability of the fund is determined by statutory interpretation and not by joint power agreement documents.

Our established rules of statutory construction control the question of whether the governmental pooling provision of W.S. 1–39–118(c)(ii) is a statutory funding mechanism or is a purchase of insurance under W.S. 1–39–118(b). To ascertain the intent of the legislature, *Stovall,* 648 P.2d 543, we give effect to every word, clause and sentence and construe all components of a statute in pari materia. *See State ex rel. Wyoming Workers' Compensation Div. v. Brown,* 805 P.2d 830, 843 (Wyo. 1991) and *Britton v. Bill Anselmi Pontiac–Buick–GMC, Inc.,* 786 P.2d 855, 864 (Wyo.1990). Applying our standard rules of construction, *Kelsey v. Taft,* 72 Wyo. 210, 263 P.2d 135 (1953); *Houghton Bros. v. Yocum,* 40 Wyo. 57, 274 P. 10 (1929),[4] we hold that W.S. 1–39–118(c)(ii) serves the legislative purpose of providing an alterna-

---

*Burnett,* 227 Neb. 351, 417 N.W.2d 355, 357 (1988):

One of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and give its effect. * * * Also, in construing a statute, this court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

tive funding mechanism for the governmental unit to defray costs created by the exceptions to immunity under W.S. 1–39–105 through 1–39–112, but more significantly from non-immunized liabilities created by federal law. See 42 U.S.C.A. § 1981 and other variant United States statutes which may create liabilities for local governmental entities or their employees.

■ Our analysis of the internal structure of W.S. 1–39–118 leads clearly to that conclusion. Subsection (a) provides a liability limitation and subsection (b) constitutes a first alternative for funding by permitting the acquisition of insurance which *both* covers the liability imposed and extends liability to the amount of policy limits provided by the policies which the entity has purchased to protect it citizenry. *Pickle*, 764 P.2d 262. Subsection (c) constitutes the second general alternative which establishes four optional categories of self-payment coverage systems leaving flexibility and choice to the entity of government:

1. (i)—put aside money as an accrual fund;
2. (ii)—join with other units of government to set aside funds as a deposit and reassessment system;
3. (iv)—with loss to utilize an installment payment arrangement; or
4. (v)—deposit of funds into a state actuarial determined account as a pool fund maintained by the state.

Not only does this internal statutory structure cause rejection of interpretively changing W.S. 1–39–118(c)(ii) pooled funds into W.S. 1–39–118(b) insurance, but any other conclusion would operate against the intent of the WARM participants. Those governmental entities seek to limit liability and protect against claim loss and not to extend liability exposure.[5] We find an interpretation of the statutes to be self-defeating and inappropriate if the result were to require participants such as WARM to extend liability by joining together or to presume knowledgeable intent to assure

unnecessary liability *in addition to* what is otherwise created by non-immunized activities included within W.S. 1–39–105 through 1–39–112 or provided by federal civil rights statutes, 42 U.S.C.A. § 1981, and other similar federally created rights of recovery where state governmental immunity is not necessarily a bar to relief. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

In construing the above sections of the statute some general rules of construction should be borne in mind. Statutes should, of course, be construed with a view to effecting the legislative intent, and such intent must be ascertained from the statute or statutes. However, a literal construction of the words used will not be sanctioned, when such construction would defeat the evident purpose of the Legislature. * * * And a construction producing unjust or absurd results will not be adopted, unless the terms of the statute preclude any other construction. *Houghton Bros.*, 274 P. at 11.

The decision of the trial court is reversed.

CARDINE, Justice, specially concurring and dissenting.

I join with the majority in its holding that Shane Facer's suit for negligent design, construction and maintenance of the city street is barred under the Wyoming Governmental Claims Act. However, in resolving that issue, the opinion of the court's analysis of W.S. 1–39–118 fires the wrong arrow in the wrong direction. The question this court should have resolved is not whether the city of Laramie had insurance. It did. Rather, we should have decided whether the city's insurance provided coverage for Shane Facer's injuries.

The premise of the majority is that self insurance is no insurance. This premise is

5. We also doubt that the legislative intent included making Wyoming attorneys who prepare joint powers agreements into experts on insur-

ance policy draftsmanship. See, for example, *St. Paul Fire and Marine Ins.*, 763 P.2d 1255.

unfounded. There is "no insurance" only when there is no funding of a reserve to pay losses. The absurdity of the majority opinion is illustrated by reference to W.S. 1–39–118(c), which provides that in addition to the procurement of insurance under W.S. 1–39–118(b), a governmental entity may:

> "(i) Establish a self-*insurance* fund against the liability of the governmental entity and its officers and employees;
>
> "(ii) Join with other governmental entities, by joint powers agreements under W.S. 16–1–102 through 16–1–108, or otherwise, to pool funds and establish a self-*insurance* fund or jointly purchase *insurance* coverage. * * *
>
> \* \* \* \* \* \*
>
> "(iv) Pay the judgment or settlement, with interest thereon, in not to exceed ten (10) annual installments in cases of undue hardship * * *." W.S. 1–39–118(c) (emphasis added).

Only subparagraph (iv) describes a *no insurance* provision, for there is no fund established that is committed to the payments of losses.

The opinion of the court construes W.S. 1–39–118(c)(ii) by shying away from use of the word "insurance." The majority's aversion to that term is surprising since the statute allows governmental entities to join together to "establish a self-*insurance* fund or jointly purchase *insurance* coverage." W.S. 1–39–118(c)(ii) (emphasis added). Instead, while invoking the well-accepted rules of statutory construction including giving "effect to every word, clause and sentence," maj. op. at 270, the opinion of the court substitutes for the word "insurance" such euphemisms as "governmental unit pool fund creation and participation" and "a funding mechanism for the governmental unit to defray costs created by the exceptions to immunity." Maj. op. at 268, 271. Sadly, the quoted language describes insurance. Therefore, I dissent to the court's ignoring the plain language of the statute and to its resulting conclusion that insurance is not insurance.

Only by stilted construction and ignoring other legislation does this court clear the hurdle of saying self-insurance is not insurance at all. This becomes particularly clear when one compares W.S. 1–39–118(c)(ii) with a related self-insurance statute, W.S. 1–39–118(c)(v). In 1986, the legislature amended W.S. 1–39–118 to add subsection (c)(v) allowing governmental entities to join a state-administered insurance program. 1986 Wyo.Sess.Laws ch. 81 § 2. Wyoming statute 1–39–118(c)(v) states:

> "[a local governmental entity may] [e]nter into contracts with the purchasing and property control division of the department of administration and fiscal control for the payment of assessments by the local government in such amounts as determined by the division to be sufficient, on an actuarially sound basis, to cover:
>
> "(A) The potential liability, or any portion of potential liability, of the local government and its public employees as provided by this act;
>
> "(B) Costs of administration;
>
> "(C) Payment by the division of claims against the local government and its public employees acting within the scope of their duties which have been settled or reduced to final judgment."

The statutes governing the administration of this state-run program are contained in W.S. 1–42–101 through –112. Wyoming statute 1–42–112 provides:

> "Self-insurance provided under this act shall not be considered a purchase of insurance coverage and shall not be deemed an increase of the limits of liability under W.S. 1–39–118(b)."

The legislature obviously recognized the danger that the self-insurance provided in W.S. 1–39–118(c)(v) could expand liability under the Governmental Claims Act. Therefore, it included the disclaimer. No such disclaimer, however, is provided for the self-insurance provision involved in this case. The W.A.R.M. agreement was established pursuant to W.S. 1–39–118(c)(ii):

> "[The governmental entity may] [j]oin with other governmental entities, by joint powers agreements under W.S. 16–1–102 through 16–1–108, or otherwise, to pool

funds and establish a self-insurance fund or jointly purchase insurance coverage."

There is a presumption in the law that where particular words or terms appear in one provision, but not in another related provision, the omission is intentional. *See Longfellow v. State*, 803 P.2d 1383, 1387 (Wyo.1991). We can say the same for a disclaimer which is effective as to one statute but not to another related statute. Had the legislature intended to say that self-insurance under W.S. 1–39–118(c)(ii) is not "insurance," it would have done so. I conclude from the legislature's silence that W.S. 1–39–118(c)(ii) self-insurance constitutes "insurance" for purposes of expanding liability under the Governmental Claims Act.

Having established that "self-insurance" under W.S. 1–39–118(c)(ii) is "insurance," I now focus on the facts in this case. An agreement was entered into between W.A.R.M. and the board's participants which specified the required cash payments of each participant and the coverage provided. The only logical conclusion that can be drawn from reading the W.A.R.M. agreement, by-laws and memorandum of coverage together is that this is insurance. Insurance is

"a contract in which one undertakes to indemnify another against loss, damage or liability arising from determinable hazards or fortuitous occurrences or to pay or allow a specified amount or determinable benefit in connection with ascertainable risk contingencies." W.S. 26–1–102(a)(xv) (Cum.Supp.1990). *See also* 1 Rhodes, *Couch on Insurance 2d* (Rev. ed. 1984) § 1:2.

The City of Laramie joined with Laramie County, Natrona County and the City of Cheyenne to form W.A.R.M. in July 1986 pursuant to the authority granted under W.S. 1–39–118(c). The purpose of W.A.R.M. is to seek "the prevention of or reduction of liability exposures which could lead to casualty and property losses to political subdivisions." Under W.A.R.M.'s bylaws, coverage includes claims for general liability, public official liability and automobile liability up $250,000 per claimant and $500,-000 per occurrence. A "Memorandum of Liability Coverage" states that W.A.R.M. will pay a loss by reason of liability imposed by law or assumed by contract for damages because of bodily injury, property damage, public official errors and omissions, and personal injury. Thus, a contract exists between W.A.R.M. and its members. This insurance contract requires W.A.R.M. to indemnify its members for described risks and liability. If it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck. And so it is with this "duck"; it must be insurance.

However, for Shane Facer, the fact that the City of Laramie had insurance does not mean that his claim is covered by insurance. W.A.R.M.'s by-laws provide that:

"It shall not be implied * * * that [W.A.R.M.] shall pay any claims in excess of the limits of liability set forth in W.S. 1–39–101 *et seq. or that it waives any immunities* or privileges granted or retained in the statute except as directed by the Supreme Court of the State of Wyoming." (emphasis added)

The W.A.R.M. agreement was entered into July 1, 1986. Prior to that time, on March 19, 1986, W.S. 1–39–120 became effective. 1986 Wyo.Sess.Laws ch. 89 § 4. Wyoming statute 1–39–120 specifically excludes liability for negligent street design, construction and maintenance from coverage under the Governmental Claims Act:

"(a) The liability imposed by W.S. 1–39–105 through 1–39–112 does not include liability for damages caused by:

"(i) A defect in the plan or design of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area;

"(ii) The failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; or

"(iii) The maintenance, including maintenance to compensate for weather conditions, of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area."

The laws in existence at the time of the formation of the W.A.R.M. agreement enter into it and become part of it as though

they were expressly incorporated therein. *See, St. Paul Fire and Marine Ins. Co. v. Albany County School Dist. No. 1*, 763 P.2d 1255, 1258–59 (Wyo.1988). The trial court noted the lack of any exclusion for highway safety in the W.A.R.M. agreement and concluded that W.A.R.M. covers highway safety claims. However, W.S. 1–39–120, which was in effect at the time W.A.R.M. was adopted, specifically excludes such claims. W.A.R.M. does not purport to extend liability beyond that contained in the Governmental Claims Act. The trial court's conclusion was, therefore, wrong. It should be reversed, not because the W.A.R.M. agreement was not insurance, but because by its terms it did not expand liability beyond that provided in the Governmental Claims Act, including W.S. 1–39–120.

Beyond the legal reasoning applicable in this case, I have other concerns about the result the majority reaches. If self-insurance is not insurance, what is it? What is the coverage? How are claims made? How are they paid? I agree that the non-insurance approach to non-liability resolves this particular case, but I foresee a multitude of problems in future cases. Wyoming statute 1–42–105(c) authorized the creation of a board to establish policies, rules and regulations for the state-run local governmental insurance program because the program was not subject to the state insurance laws. W.S. 1–42–109. If self-insurance under W.S. 1–39–118(c)(ii) is not insurance, then is the W.A.R.M. or any other self-insurance board unregulated?

I am compelled to make one final comment. The majority opinion contains the following footnote:

> "We also doubt that the legislative intent included making Wyoming attorneys who prepare joint powers agreements into experts on insurance policy draftsmanship." Maj. op., n. 5.

The statement implies that Wyoming attorneys lack the competence to draft insurance policies. Such criticism is surely undeserved. Wyoming attorneys are called upon to draft many types of agreements and contracts and do so very well. There is no reason—and the majority offers none—to support a suggestion that Wyoming attorneys lack the competence to draft an insurance policy. It may be this kind of myopic thinking that causes the state of Wyoming to frequently employ outside counsel, often out-of-state counsel, to represent it in important affairs and litigation.

I would hold that there was insurance under W.S. 1–39–118(c)(ii). However, the W.A.R.M. agreement does not extend liability to negligent street design, construction and maintenance because immunity is provided under W.S. 1–39–120, and the W.A.R.M. agreement of appellant provided that it did not "waive any immunities * * * granted or retained in the statute [Governmental Claims Act]."

I would reverse on the bases stated in this specially concurring and dissenting opinion.