**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 19 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK ADAMS,

       Plaintiff-Appellee,

v.

RELIANCE STANDARD LIFE
INSURANCE COMPANY, a
Philadelphia corporation,

       Defendant-Appellant.

No. 98-8094

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 95-CV-43-J)**

---

Gary R. Scott of Hirst & Applegate, P.C., Cheyenne, Wyoming, for Defendant-
Appellant.

Mitchell E. Osborn of Grant & Osborn, Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**BROWN**, Senior District Judge.*

---

* The Honorable Wesley E. Brown, Senior District Judge, United States District
Court for the District of Kansas, sitting by designation.

**BROWN**, Senior District Judge.

Reliance Standard Life Insurance Company ("Reliance") appeals a judgment in favor of plaintiff Mark Adams on Adams' claim for breach of contract. At issue is the district court's determination that Reliance misinterpreted the terms of a long term disability policy and thereby underpaid Adams on benefits due under the policy.

I.

The first issue we must address is whether this case falls within the subject matter jurisdiction of the federal courts. Throughout the lengthy history of this case, the parties and the district court apparently assumed the case arose under the court's diversity jurisdiction. See 28 U.S.C. § 1332. But the complaint did not even address federal jurisdiction and, although it alleged that plaintiff was a resident of Wyoming and that Reliance was an insurer domiciled in Pennsylvania and licensed to transact business in Wyoming as a foreign insurer, it contained no specific allegation that diversity jurisdiction existed or that the amount in controversy exceeded $50,000. [1] The closest it came was in a prayer for relief where it sought judgment "for a sum

---

[1] This action was filed prior to the 1996 amendment of § 1332. As such, the former threshold of $50,000 applies in this case rather than the current requirement of $75,000.

sufficient to invoke the jurisdiction of this court under F.R.C.P. § 28(c) 1242 [sic] ....".

In light of the limited subject matter jurisdiction granted to the federal courts by Congress, we have a duty to satisfy ourselves that jurisdiction is appropriate. See Cisneros v. ABC Rail Corp., 217 F.3d 1299, 1302 (10th Cir. 2000). Accordingly, after oral arguments we ordered the parties to brief the issue of subject matter jurisdiction. Unfortunately, the resulting briefs focused only on the parties' citizenship and not on the amount in controversy. Defendant's brief did not discuss the amount in controversy, and plaintiff's only mention of it was a cryptic assertion that the prayer for relief in the complaint was sufficient because it constituted an unchallenged general allegation that the amount in controversy was over the minimum. ( Citing Gibbs v. Buck, 307 U.S. 66 (1939)). An open-ended prayer for recovery, however, is not an allegation that diversity jurisdiction exists or that the amount in controversy exceeds $50,000. See Gibson v. Jeffers, 478 F.2d 216, 221 (10th Cir. 1973) (plaintiff must allege sufficient damages to assure the district court that the jurisdictional requirement has not been "thwarted by the simple expedient of inflating the complainant's ad damnum clause."). Cf. Gibbs, 307 U.S. at 69 ("There was a formal allegation that the amount in controversy exceeded $3,000, exclusive of interests and costs.").

Faced with this apparent void, we remanded the case to the district court to conduct additional proceedings concerning the jurisdictional issue. In the course of a hearing on that issue (at which all present agreed the amount in controversy exceeded $50,000), the district court and counsel reviewed some of the factual allegations in the complaint. At the conclusion of the hearing, the district court entered an order finding diversity jurisdiction was present under § 1332 because the court "may infer from the pleadings filed in this case that the amount in controversy is over $50,000." The district court's order cited several facts in the complaint in support of this inference.

In the course of the aforementioned hearing, the district court noted a fact not otherwise appearing in the record before us: that the pretrial order in this case contained a specific finding that jurisdiction was appropriate under § 1332. Transcript Of May 17, 2000, Hearing at p. 12.[2] Because a pretrial order supersedes the pleadings, we may consider this as a proper allegation of jurisdiction, even if the complaint was inadequate in that regard.[3] In view of this allegation and the district

_____

[2] Although the Pretrial Order was not designated as part of the record in this case, we will accept the district court's unchallenged assertion on this point.

[3] Additionally, we note that 28 U.S.C. § 1653 provides: "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Inasmuch as this provision was intended to broadly permit amendment to avoid dismissal on technical grounds, see Brennan v. Univ. of Kansas, 451 F.2d 1287, 1289

4

court's finding, the question now before us is simply whether the record will support the court's finding. We are satisfied that the dispute is between citizens of different states, and so our discussion is limited only to the amount in controversy.

The rule governing dismissal for want of jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith. St. Paul Indemnity Co. v. Red Cab Co, 303 U.S. 283, 288-89 (1938). It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. Id. The burden is on the party asserting jurisdiction to show it is not a legal certainty that the claim is less than the jurisdictional amount. See Watson v. Blankinship, 20 F.3d 383, 386 (10th Cir. 1994). A plaintiff's allegations in the complaint alone can be sufficient to make this showing. "Although allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." State Farm Mut. Auto. Ins. Co. v Narvaes, 149 F.3d 1269, 1272 (10th Cir. 1998) (quoting Gibson v. Jeffers, 478 F.2d 216, 221 (10th Cir. 1973)).

We stated in our order of May 4, 2000, that plaintiff's claim for breach of

_____

(10th Cir. 1971), we think the interests of justice in this case would favor an amendment of the pleadings to correct the defect and to include a proper allegation of jurisdiction.

contract alleged he was underpaid the sum of $651.88 per month from July 1990 to the filing of his complaint on February 25, 1995, and we thus concluded he sought $35,853.40 in damages over this period. The district court accepted that figure as a starting point and went on to conclude that plaintiff's other claims for damages-including for statutory attorney's fees and emotional distress  - could easily exceed the remaining $14,000 or so necessary to reach $50,000. Having reviewed the record before us, we now conclude - for a somewhat different reason - that plaintiff has made an adequate showing that the amount in controversy exceeded $50,000. In so finding, we note that we may have previously read the complaint too narrowly when we concluded that plaintiff only sought relief up to the date his complaint was filed. A further review of the record now persuades us that plaintiff also sought prospective relief relating to his benefits. Plaintiff alleged in the complaint that he "is contractually entitled to receive monthly disability benefits ... for as long as the Plaintiff remains totally disabled." Aplt. App. at 9. The complaint asserted that Reliance breached the contract by miscalculating plaintiff's monthly benefit and "[t]hus, since July of 1990, the Plaintiff has been underpaid by the sum of $651.88 per month." Id. It alleged that the breach "has resulted in the refusal to pay Plaintiff approximately 37% of the total benefits to which he is entitled." Id. at 11. The complaint alleged that "[a]s a result of Defendants' continuing breach of contract, the

Plaintiff has incurred and sustained substantial loss," and it sought damages for "[a]ll benefits to which the Plaintiff was entitled and remain [sic] entitled to receive under his contract of insurance with Reliance" as well as "[s]uch other and further relief as the court may find equitable and just after hearing the evidence at trial." Id. at 12. It further alleges that the defendant breached a duty of good faith and fair dealing "because it did not, nor does it now, have a reasonable basis for refusing to pay the Plaintiff a monthly disability benefit" in the sum requested by plaintiff. Id. at 13. An attachment to the complaint showed that plaintiff had demanded that Reliance pay the allegedly past due benefits and that it make future payments in the amount asserted by plaintiff. Id. at 50. While the complaint certainly could have been drafted more clearly, these allegations may be fairly construed as seeking past and future relief concerning the payment of plaintiff's benefits. When the value of these disputed future benefits is taken into account, it is clear that the amount in controversy in fact exceeded $50,000 at the time the action was brought. Accordingly, any other issues relating to the amount in controversy are immaterial. In sum, the record supports the district court's finding, and we now conclude that we have subject matter jurisdiction over the dispute.

## II.

Plaintiff Mark Adams was hired as a teacher with Laramie County School

District No. 1 in 1986. In April of 1989, he became totally disabled, and thereupon became entitled to disability benefits under a group long term disability insurance policy that had been purchased by the School District from defendant Reliance Standard Life Insurance Company. Adams has received monthly disability payments from Reliance from the date of his initial disability to the present.

The policy covering Adams provided that the monthly disability benefit paid to an insured would be the lesser of: (1) "66 2/3% of Covered Monthly Earnings" or (2) "70% of your total earnings minus Other Income Benefits...." Aplt. App. at 31, 41.

According to a definition in the policy, "Covered Monthly Earnings" means "the Insured's basic monthly salary received from [the Employer] on the Policy anniversary just before the date of Total Disability. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings." Aplt. App. at 32. The parties agree that plaintiff's Covered Monthly Earnings were $2,858.00 (from his annual base salary of $34,296.00) and that his disability benefit calculated under subsection (1) was $1,906.29. Reliance initially began paying plaintiff a benefit in that amount. In July of 1990, however, plaintiff also began receiving social security disability payments of $910 per month. Because such payments fall within the definition of "Other

Income Benefits" used in subsection (2) above, plaintiff's monthly benefit under the policy was affected. The parties agree that after July of 1990, plaintiff's benefit was to be determined in accordance with subsection (2), because the benefit under that subsection would clearly be less than under subsection (1). The parties disagree, however, on the proper method of calculating the benefit under subsection (2).

The dispute turns on the term "total earnings," which was not defined in the policy. In calculating plaintiff's benefit under subsection (2), Reliance determined that plaintiff's basic monthly salary of $2858.00 constituted his "total earnings." Accordingly, it took 70% of that figure (or $2,000.60), and subtracted the $910 social security benefit, resulting in a monthly benefit of $ 1,090.60. Plaintiff, on the other hand, asserted that his "total earnings" included additional compensation he received from the School District for performing extra work, as well as health insurance premiums and retirement contributions that were paid by the School District on his behalf as required under the terms of a collective bargaining agreement. According to plaintiff, his monthly benefit taking into account these other sums should have been $1,742.48.[4] The district court agreed and granted plaintiff's motion for

_____

[4] In addition to his basic salary, plaintiff was paid $4,579.66 by the School District in 1988-89 for the performance of extra duties. The record indicates that the School District also paid the sum of $2,221.80 for health insurance premiums and $4,281.94 in retirement contributions on plaintiff's behalf. Aplt. App. Vol I at 57. Although adding these sums to plaintiff's basic salary results in a total of $45,379.40,

summary judgment with respect to this claim, finding that "total earnings" was clear and unambiguous and that it included the benefits and additional compensation provided to plaintiff by the School District.

The law of Wyoming governs in this diversity action. See e.g., Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). Under Wyoming law, an insurance policy is a contract, and the general rules of contract construction apply to insurance agreements. St. Paul Fire and Marine Ins. Co. v. Albany Co. School Dist., 763 P.2d 1255, 1258 (Wyo. 1988). The court determines the intent of the parties by examining the written agreement and by giving the words used the meaning that a reasonable person in the position of the insured would understand them to mean. Kirkwood v. CUNA Mut. Ins. Society, 937 P.2d 206, 208 (1997). If the policy language is clear and unambiguous, the policy must be interpreted in accordance with the ordinary and usual meaning of its terms. Albany School Dist., 763 P.2d at 1258. An exception to construing insurance policies as other contracts has been recognized where the language of the policy is ambiguous, in which case the policy must be strictly construed against the insurer. Id. See also Ahrenholtz v. Time Ins. Co., 968 P.2d

_____

the district court found that his total earnings were $45,470.99, or $3,789.25 per month. Because Reliance has not challenged the accuracy of the latter figure, we accept it here. Seventy percent of the latter figure would be $2,652.47, and subtracting the $910 social security payment from that figure results in a monthly benefit of $1,742.48.

946, 949 (Wyo. 1998). An ambiguity exists when a contract is obscure in its meaning because of indefiniteness of expression or because it contains a double meaning. Kirkwood, 937 P.2d at 208.

We agree with the district court that the policy language is clear and unambiguous. "Earnings" is defined in the dictionary as "something (as wages or dividends) earned as compensation for labor or the use of capital...." Webster's Third New Int'l. Dictionary 714 (1961). Absent any sort of modifier, the term is quite broad. Cf. Black's Law Dictionary 509 (6th Ed. 1990) (noting that "earnings" is broader in meaning than "wages"). The term appeared in this policy with two different modifiers: "Covered Monthly Earnings" and "total earnings." Both of these terms were used in connection with calculating the amount of the insured's disability benefit. Because of this, the terms should be construed with reference to each other, if it is reasonable to do so. "Total earnings" is obviously broader than the more limited "Covered Monthly Earnings," the latter being defined to include base salary but not "commissions, overtime pay, bonuses or any other special compensation." Because these non-covered items clearly fall within the ordinary and usual meaning of "earnings," a reasonable person examining the language must conclude that "total earnings," at a minimum, encompasses those items specifically excluded from "covered monthly earnings." Thus, "total earnings" would include commissions,

overtime, bonuses and other special compensation. Cf. Deegan v. Continental Cas. Co., 167 F.3d 502, 507 (9th Cir. 1999) (under an ERISA plan, "earnings" would include the items excluded from plaintiff's salary). As applied here, the $4,579.66 in wages received by plaintiff for special project work in 1988-89, which was above and beyond his regular salary, obviously falls within this category, and is thus properly considered as part of total earnings. Likewise, a reasonable person in the position of the insured would consider the health insurance and retirement contributions paid by the School District, which were part of the compensation earned by plaintiff in his job with the School District, to be part of his total earnings as a teacher for the School District.

Reliance argues that the critical issue here is the intent of the parties, and maintains that negotiations leading up to the policy show the parties intended "that the policy benefits replace only an employee's base salary." Aplt. Br. at 26. That asserted intent, however, is at odds with the policy language. If Reliance and the School District intended to base the benefit only on an employee's base salary, they should not have adopted language saying the benefit would be based on the employee's "total earnings." As we noted earlier, the intent of the parties is determined from the written agreement, giving the words used the meaning that a reasonable person in the position of the insured would understand them to mean.

Kirkwood v. CUNA Mut. Ins. Society, 937 P.2d 206, 208 (Wyo. 1997). The words used here were unambiguous and the court will not look beyond the agreement to see if there is some evidence of a contrary intent. "The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guide of judicial construction, to rewrite the policy." St. Paul Fire & Marine Ins. Co. v. Albany Co. School Dist., 763 P.2d 1255, 1258 (Wyo. 1988).

Lastly, Reliance contends that if plaintiff's benefits and special compensation are included as part of his total earnings, then they must also be deducted as "Other Income Benefits" under subsection (2) of the benefit formula. This argument is unavailing. According to the policy, "Other Income Benefits" that must be deducted refers only to "benefits resulting from the same Total Disability for which a Monthly Benefit is payable under this Policy,..." Aplt. App. at 41. The health insurance premiums, retirement contributions and extra compensation received by plaintiff were not benefits resulting from his disability; they were part of his compensation as an employee of the School District.

## III.

The district court correctly determined that plaintiff was entitled to summary

judgment on the claim for breach of contract.[5]  Accordingly, the judgment of the

district court is AFFIRMED.

---

[5]  Reliance also challenges the district court's denial of its "Petition for Reconsideration" filed within ten days of the district court judgment.  Such a motion is considered under Fed. R. Civ. P. 59(e).  See Hatfield v. Bd. of County Comm'rs. for Converse County, 52 F.3d 858, 861 (10th Cir. 1995) (noting that a "motion for reconsideration" filed within 10 days of judgment is considered a Rule 59(e) motion). "We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard."  Phelps v. Hamilton, 122 F.3d 1309, 1324 (10th Cir. 1997) (citation omitted).  Under that standard, a motion for reconsideration "should be granted only to correct manifest errors of law or to present newly discovered evidence."  Id. (internal quotations omitted).  Reliance has not presented any new evidence on appeal, nor do we discern manifest error, and thus Reliance has failed to show the district court abused its discretion in denying the motion.

No. 98-8094, *Adams v. Reliance Standard Life*

**McWILLIAMS**, Senior Circuit Judge, Dissenting

In my view the present record does not support an inference that when the complaint was filed the amount in controversy was in excess of $50,000. Nor was such failure, in my view, thereafter cured. Therefore, the district court did not have subject matter jurisdiction.