United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 2, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 04-60043

---

EDWARD P. KESZENHEIMER, JR.,

Plaintiff - Appellee,

versus

RELIANCE STANDARD LIFE INSURANCE CO.;
WEATHERFORD INTERNATIONAL,
As Successor to Dailey International
also known as Dailey Petroleum Services, Inc.,

Defendants - Appellants.

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

Before REAVLEY, HIGGINBOTHAM, and DEMOSS, Circuit Judges.

PER CURIAM:

In this case we must decide whether a plan administrator properly interpreted an insurance policy to exclude from the disability benefit calculation an employee's offshore per diem and automobile allowance. The district court held that the administrator's interpretation was in error. We reverse and render judgment.

I

Edward P. Keszenheimer, Jr., filed a pro se complaint for damages against Reliance Standard Life Insurance Company ("Reliance") and Weatherford International pursuant in part to the

Employee Retirement Income Security Act of 1974 ("ERISA"),[1] alleging that he was covered by a long-term disability policy provided by Reliance to employees of Dailey Petroleum Services Corporation ("Dailey"), the predecessor to Weatherford.[2] He alleged that he had been unable to return to work since November 13, 1994, due to the onset of vestibular neuronitis, and had filed for and received benefits under the policy. Keszenheimer contended that Reliance had erroneously calculated his monthly benefits. He also asserted claims of breach of contract, breach of fiduciary duty, interference with protected rights, bad faith insurance, and emotional distress.

The district court dismissed the claims of breach of contract, bad faith, and emotional distress, finding them preempted by ERISA. The court allowed Keszenheimer to proceed, however, on his claims for recovery of unpaid plan benefits and for breach of fiduciary duty, as such remedies were available under ERISA.

The defendants moved for summary judgment on the remaining claims, arguing that Reliance correctly calculated Keszenheimer's benefits. The defendants contended that the policy definition of "Covered Monthly Earnings," upon which benefits are based, includes only Keszenheimer's base salary, not the additional payments,

---

[1] 29 U.S.C. § 1001, *et seq.*

[2] *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

labeled "bonuses" by the defendants, that Keszenheimer received for offshore work. Keszenheimer opposed the motion, arguing that the additional payments--his offshore per diem and automobile allowance--were not "bonuses" but rather "commissions," and thus should have been included by Reliance in the monthly benefit calculation. Although only the defendants had moved for summary judgment, at the hearing on that motion, the parties agreed that the district court would rule for or against either party based on the record.

At the hearing, the district court identified the only issue before it as whether the monthly benefit amount paid to Keszenheimer was accurate. Resolution of this issue required the district court to interpret the policy provision that defines "Covered Monthly Earnings," because the monthly long-term disability benefit is calculated under the policy to an amount equal to two thirds of Covered Monthly Earnings.

The policy defines Covered Monthly Earnings as "the Insured's monthly salary . . . on the day just before the date of Total Disability."[3] The policy specifically *excludes* "overtime pay,

---

[3] The full policy definition of "Covered Monthly Earnings" is as follows:
> "Covered Monthly Earnings" means the Insured's monthly salary received from you on the day just before the date of Total Disability. Covered Monthly Earnings do not include overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings. However, "Covered Monthly Earnings" will include commissions received from you averaged over the lesser of:
>   (1) the number of months worked; or
>   (2) the 24 months;

3

bonuses or any other special compensation" from the definition of Covered Monthly Earnings, but specifically *includes* "commissions." The policy does not define "monthly salary," "bonuses," "special compensation," or "commissions."

While disagreeing over which components of Keszenheimer's income should be included in his Covered Monthly Earnings for purposes of calculating benefits under the policy, the parties stipulated that, on average, the aggregate of Keszenheimer's regular salary, offshore per diem payments, and taxable automobile allowance amounted to $6,134.53 per month.[4] They further stipulated that Dailey, Keszenheimer's employer, referred to the per diem at different times as "incentive pay, incentive per day, day pay, deferred day pay, extra day pay, supplemental pay, on rig bonus, on rig days, bonus day rate, additional day pay, extra day pay, bonus, and offshore bonus."

The district court, in an oral bench opinion on August 27, 2003, declined to exclude Keszenheimer's per diem and taxable automobile allowance from Keszenheimer's Covered Monthly Earnings, finding that they were "expected," "usual," and "guaranteed." The court subsequently granted summary judgment in favor of Keszenheimer and ordered that he receive $269,933.40 in unpaid

---

just prior to the date Total Disability began.

[4] This was calculated by summing Keszenheimer's regular monthly salary and a 24-month average of both his offshore per diem and the taxable automobile allowance.

benefits, plus post-judgment interest and costs.  The defendants filed a timely notice of appeal.

II

We review summary judgment decisions *de novo*, applying the same test as the district court.[5]  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6]  In making this determination, we evaluate the facts in the light most favorable to the non-moving party.[7]

When interpreting an ERISA-covered policy, we construe the plan's terms *de novo* where, as here, the parties acknowledge that the administrator has not been given the discretion to determine benefit eligibility or to construe the plan's terms.[8]  The construction of the policy provisions is governed by federal common law, although analogous state law may be used for guidance to the extent that it is not inconsistent with congressional policy

---

[5] *Facility Ins. Corp. v. Employers Ins. of Wausau*, 357 F.3d 508, 512 (5th Cir. 2004).

[6] FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ramming v. Nat'l Gas Pipeline Co. of Am.*, 390 F.3d 366, 371 (5th Cir. 2004).

[8] *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

5

concerns.[9]  When interpreting plan provisions, we interpret the contract language "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one."[10] If, however, the plan terms remain ambiguous after application of ordinary principles of contract interpretation, they are construed strictly in favor of the insured.[11]

## III

We must determine whether Keszenheimer's per diem and automobile allowance qualify as Covered Monthly Earnings either as part of Keszenheimer's "monthly salary" or as "commissions." However, if the per diem and automobile allowance are "overtime pay, bonuses or any other special compensation," they are specifically excluded from Covered Monthly Earnings.  The terms at issue here are not ambiguous, "but rather have an ordinary and generally accepted meaning."[12]

## A

Appellants first argue that Keszenheimer's per diem and auto

---

[9] *Id.*

[10] *Id.* (internal quotation marks and citation omitted).

[11] *Id.*

[12] *Id.* (holding terms "overtime" or "any other extra compensation" to be unambiguous and assuming "salary" was also commonly understood).  Because the plain meaning of the policy terms are clear we need not consider what, if any, weight to place on the affidavit of Mr. Spinks, in which he claims that, in a telephone conversation, a representative of Dailey indicated that the per diem would be included in the calculation.

allowance are not included in the term "monthly salary." We agree.

"Salary" is "fixed compensation paid regularly (as by the year, quarter, month, or week) for services."[13] Keszenheimer's per diem and auto allowance compensation, which vary each month, are not part of his "monthly salary."[14] Compensation paid ad hoc for working discrete blocks of time--such as an hourly wage--is not typically considered salary.[15] Not unlike an hourly wage earner, Keszenheimer's per diem and auto allowance compensation were not fixed, but were paid only for the days that he worked offshore.[16] Given the fluctuation in income day-to-day and month-to-month, this does not fit the plain meaning of "monthly salary" as contemplated in the policy and as commonly understood.

Keszenheimer's reliance on *Wegner v. Standard Insurance Co.*[17] is unavailing. In *Wegner*, disability benefits were calculated

---

[13] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2003 (1961); *see also* BLACK'S LAW DICTIONARY 1364 (8th ed. 2004) (defining "salary" as "[a]n agreed compensation for services . . . usu. paid at regular intervals on a yearly basis, as distinguished from an hourly basis"); *Pub. Employees' Ret. Sys. v. Stamps*, --- So.2d ---, 2005 WL 107165, at *10 (Miss. Jan. 20, 2005) (distinguishing "salary" from fee for discrete task); *cf*. MISS. CODE ANN. § 25-4-103(p)(iii) (distinguishing "salary" from "per diem" and "expenses" in context of defining "public servant").

[14] *See Perugini-Christen v. Homestead Mortgage Co.*, 287 F.3d 624, 628 (7th Cir. 2002) ("[T]he branch profits cannot be considered salary because although they were earned on a monthly basis, they were in no way fixed compensation.").

[15] *Wegner*, 129 F.3d at 819 ("'[A]dditional compensation for extra hours worked is . . . not generally consistent with salaried status.'" (quoting *Abshire v. County of Kern,* 908 F.2d 483, 486 (9th Cir.1990)).

[16] In contrast, Keszenheimer also received regular income that stayed the same regardless of his offshore days; *this* was his "salary," as Reliance properly concluded in making its initial calculation and awarding benefits to Keszenheimer.

[17] 129 F.3d 814 (5th Cir. 1997).

7

based on "predisability earnings," defined as the "monthly rate of earnings . . . including commissions and deferred compensation, but excluding bonuses, overtime pay and any other extra compensation."[18] Our focus in *Wegner* was on whether the compensation in question fell into one of the specifically excluded categories, and we assumed without much discussion that the compensation was included in the "monthly rate of earnings" in the first place. We note that "earnings" is a broader term than "salary,"[19] which suggests that *Wegner*'s control on our interpretation of "monthly salary" is limited.

Nonetheless, our classification of Wegner's compensation (a fixed amount of $300 per day, seven days per week) as a "salary" supports our interpretation of "monthly salary" in the instant case. We observed that Wegner's status changed "from an hourly to a salaried employee" and that "he would be paid a salary of $300 per day."[20] Furthermore, "[t]he relevant employment documents . . . explicitly identify . . . his new pay status to be 'salaried' (not hourly)" and additional compensation for extra hours worked is "not

---

[18] *Id.* at 817 (internal quotation marks and emphasis omitted).

[19] *See, e.g.*, *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1185 (10th Cir. 2000) ("earnings" broader than "salary"); *Deegan v. Cont'l Cas. Co.*, 167 F.3d 502, 507 (9th Cir. 1999) (same). In *Adams*, also involving Reliance, the court noted that "[i]f Reliance and the [employer] intended to base the benefit only on an employee's base salary, they should not have adopted language saying the benefit would be based on the employee's 'total earnings.'" *Adams*, 225 F.3d at 1185. Here, Reliance did just that, restricting the benefits calculation to the "monthly *salary*."

[20] *Wegner* 129 F.3d at 816–17.

generally consistent with salaried status."[21]  Unlike Wegner's fixed compensation, Keszenheimer's per diem and automobile allowance varied based on the number of days he actually worked. Additionally, Keszenheimer's earning statement accounts for his regular salary separate from the per diem and auto allowance.[22]

We are persuaded that the district court's contrary holding, that the per diem "was a part of the basic monthly salary," is in error.[23]  The court backed into this conclusion by first holding that the per diem--by virtue of being "expected," "usual," and "guaranteed"--was not a "bonus."[24]  However, that the per diem payments were "expected," "usual," and "guaranteed"--in that Keszenheimer knew that he was entitled to receive payment for each day worked offshore--does not answer the "salary" question. An hourly wage or a series of payments for discrete contracted tasks could be equally expected, usual, and guaranteed.  This is not

---

[21] *Id.* at 819 (internal quotation marks and citation omitted).

[22] The earnings statement had separate line entries for "offshore bons[sic]," "car premium" and "regular."  *Cf*. *Wegner*, 129 F.3d at 819 ("Had Wegner's employer . . . meant for his compensation to be overtime, it could have plainly indicated this on the relevant employment documents."); *West v. West*, --- So.2d ---, 2004 WL 2749146, at *1 n.1 (Miss. Dec. 2, 2004) (property settlement agreement specifically defined "monthly salary" as "the gross taxable salary or wages paid to husband").

[23] The court also interpreted the word "basic"; however, in the definition of Covered Monthly Earnings, the operative phrase is "monthly salary."  The term "basic" does not appear.

[24] Much of the district court's oral bench opinion is focused on showing why the per diem and auto allowance are not specifically *excluded*.  For example, the court notes that the defendants "weren't careful in drafting a document to exclude that from his monthly earnings."  This, however, puts the cart before the horse because the first--and, as it turns out dispositive--question is whether they are even *included* to begin with.

9

enough to make it a "monthly salary."

B

Next, Appellants argue that the per diem and auto allowance do not fall within the specifically included category of "commissions." Again we agree.

A "commission" is "a fee paid to an agent or employee for transacting a piece of business or performing a service," usually "a percentage of the money received in a sale or other transaction paid to the agent responsible for the business."[25] Keszenheimer's per diem and auto allowance do not qualify under this common definition. Keszenheimer was not a salesperson. The per diem and auto allowance payments were not a percentage of or related to a transaction. They were flat daily fees that Keszenheimer received in exchange for a day's offshore work. They did not vary based on Keszenheimer's personal productivity or on any particular outcome.[26]

In *Perugini-Christen v. Homestead Mortgage Co.*,[27] the Seventh Circuit confronted another Reliance policy containing a similar definition of "Covered Monthly Earnings." In that case the policy

---

[25] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 457 (1961); *see also* BLACK'S LAW DICTIONARY 286–87 (8th ed. 2004) (defining "commission" as "[a] fee paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction"); *Russo v. U.S. Life Ins. Co.*, No. 98-1224, 1999 WL 102744, at *5 (E.D. La. 1999) ("A commission, on the other hand, is defined as 'a fee or percentage paid to a salesperson or agent for his or her services.'" (quoting WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 287 (1984))).

[26] *See, e.g.*, *Russo*, 1999 WL 102744, at *5 (finding payments to be a "commission" where based on personal "productivity" and "entirely on the business Dr. Russo brought into the clinic for that quarter").

[27] 287 F.3d 624 (7th Cir. 2002).

10

definition included both commissions and bonuses, but made a distinction between the two when calculating benefits.[28] The plaintiff preferred the payments at issue to be characterized as commissions; however, the court rejected plaintiff's argument that "because [plaintiff] was contractually entitled to the branch profits, they cannot be considered bonuses," agreeing instead with Reliance's argument that because "[plaintiff's] employment agreement with Homestead characterized the branch profit payments as bonuses, [plaintiff] should be bound by the terms of that agreement."[29] The court held that "the branch profits are unlike ordinary commissions because although they are calculated as a percentage of the proceeds, they are not based on [plaintiff's] personal sales, but rather on the sales of the branch as a whole."[30] This supports our conclusion that Keszenheimer's per diem and automobile allowances do not fall within the term "commission" as used in the policy and as commonly understood.

C

In light of our holding that the per diem and car allowance were never included in the policy's Covered Monthly Earnings to begin with, we need not decide whether the per diem and automobile allowance would fall into one of the policy's specifically excluded

---

[28] *Id.* at 626.

[29] *Id.* at 627.

[30] *Id.* at 628.

categories of compensation (*e.g.*, "bonuses"). It is also unnecessary to address whether Keszenheimer conceded that the automobile allowance should be excluded. Furthermore, we decline to consider Keszenheimer's argument, raised for the first time on appeal, that the district court improperly allowed a social security disability benefits setoff.

                                    IV

We are persuaded that the district court erred in interpreting "Covered Monthly Earnings" in the policy language to include Keszenheimer's offshore per diem and automobile allowance payments. These forms of compensation are neither "monthly salary" nor "commissions." Reliance's calculation of Keszenheimer's benefits was proper and, accordingly, the district court should have entered summary judgment in favor of Appellants.

The judgment of the district court is REVERSED. Judgment is RENDERED for Appellants.