**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

OLEN KENNEDY,

      Plaintiff-Appellant,

v.

DARRIN SMITH, Deputy Sheriff
Muskogee County; PAULA SEXTON,
Muskogee Court Clerk; PEARSON,
Sheriff,

      Defendants-Appellees.

No. 07-7035
(D.C. No. 04-CV-249-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **BALDOCK**, and **EBEL**, Circuit Judges.

---

In this pro se civil rights action brought pursuant to 42 U.S.C. § 1983, Olen

Kennedy, a state prisoner serving life imprisonment, appeals from an order of the

district court granting defendants' motion for summary judgment.  Mr. Kennedy

argues that an anonymous letter accusing him of an additional crime that the

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

defendants circulated to the news media compromised his ability to obtain parole, thereby violating his constitutional rights.

Mr. Kennedy is also appealing the order of the district court denying his motion for rehearing and motion to recuse the district court judge. Mr. Kennedy further complains that the district court did not allow him to conduct sufficient discovery and failed to appoint counsel to represent him.

Exercising jurisdiction under 28 U.S.C. § 1291, we find no merit in Mr. Kennedy's arguments and therefore affirm.

## I. Background

### A. The Anonymous Letter.

In 1973, Mr. Kennedy was convicted of murder under Oklahoma law, and he is currently serving a life sentence in an Oklahoma state prison. In March 2004, the Muskogee County Court Clerk's office received an anonymous hand-written letter in the mail which alleged that Mr. Kennedy had committed another murder prior to his incarceration. Specifically, the letter stated that Mr. Kennedy had killed the "10 yr old Nix boy" and hidden his body in the basement of the "Old Muskogee Hotel." R., Doc. 165, Ex. 4.

The Court Clerk's office forwarded the letter to the Muskogee County Sheriff's Office. Defendant Sheriff Pearson subsequently assigned defendant Sheriff Deputy Smith to investigate the allegations in the letter. The investigation failed to uncover any relevant information, and the Sheriff's Office decided to

-2-

have the contents of the letter published in two local newspapers.  Copies of the two resulting newspaper articles are attached to Mr. Kennedy's complaint, and both articles reported that Mr. Kennedy had been accused by the writer of the anonymous letter of killing a ten-year-old boy.  *Id.*, Doc. 1, Exs. A, B.  In addition, because the writer of the letter refers to very specific facts, Sheriff Pearson and Deputy Sheriff Smith are quoted in the articles as saying they believed the letter was "real."  *Id.*  One of the articles also requested that "[a]nyone with information about the old Muskogee Hotel buried-child case should call the Muskogee County Sheriff's Office."  *Id.*, Ex. A.  But, as defendants explain in their brief, "[u]ltimately, the investigation [of the alleged murder] was inconclusive, no ongoing investigation was deemed necessary and no charges were filed."  Aplees. Br. at 5.

## B.  Denial of Parole in October 2004.

The two newspaper articles were published in April 2004.  In October 2004, Mr. Kennedy was denied parole by the Oklahoma Pardon and Parole Board (Parole Board), and previously he has been denied parole at least ten times during his term of incarceration.  R., Doc. 165, Ex. 2 at 55.  Mr. Kennedy testified at his deposition in February 2007 that he does not know why the Parole Board denied parole on any of those occasions.  *Id.* at 56.  He also testified that he does not know whether the Parole Board knew about or considered the two newspaper articles when it denied parole in October 2004.  *Id.* at 62-63, 66-67.  In addition,

the record indicates that, while the district court granted the parties several months to conduct discovery and Mr. Kennedy submitted written discovery requests to defendants and attempted to take their depositions, he did not seek any discovery from the Parole Board.

### C. Mr. Kennedy's § 1983 Claims and the District Court's Rulings.

In his § 1983 complaint, Mr. Kennedy alleged as follows:

> On or about April 1st, 2004 IN CONSPIRACY with each other, without proper investigation, or verification of facts, the defendants made libelous, malicious, negligent, vindictive 'sensationalist' [tabloid] type false statements AND CAUSED THEM TO BE PUBLISHED, slandering and defaming the plaintiff, . . . and did so in a conspiracy to DEPRIVE HIM of a meaningful parole consideration.

R., Doc. 1 at 2.[1]; *see also* Aplt. Opening Br. at 16 (alleging that defendants engaged "IN A LONG RUNNING conspiracy to prevent plaintiff from receiving a state parole"). In short, Mr. Kennedy alleged that defendants Sexton (the Muskogee County Court Clerk), Sheriff Pearson, and Sheriff Deputy Smith conspired to defame him by having false information published in the media, which information demeaned his reputation and caused the Parole Board to deny parole in October 2004.[2]

---

[1]    In addition to Sexton, Pearson, and Smith, Mr. Kennedy also named three Oklahoma newspapers and three Oklahoma television stations as defendants in his complaint. The district court separately dismissed the claims asserted against the latter defendants, and those claims are not at issue in this appeal.

[2]    Although Mr. Kennedy also alleged that the publication of the anonymous

(continued...)

The district court construed Mr. Kennedy's allegations as stating both

federal and state law claims, and, after extensive briefing by both sides, the court

entered summary judgment in favor of defendants based on the following

reasoning:

> As to the defendant Sexton, plaintiff alleges her sole role in the underlying events was limited to receiving the anonymous letter and forwarding it to the Sheriff's office. As to defendants Pearson and Smith, plaintiff clearly disagrees with the investigative methods used to investigate the letter, but he offers no evidence of any "concerted action" between the defendants to deprive[] him of his constitutional rights. The role of the Sheriff's office was to investigate the allegations made in the letter. This does not appear to be an unconstitutional goal. In fact, it was their job. Plaintiff must establish there was an agreement among defendants to deprive him of a constitutional right. Plaintiff does not even offer conclusory allegations of a conspiracy. He has failed to establish [there] was an agreement among defendants to deprive him of his constitutional rights. Accordingly, his claim must fail.

> The civil rights conspiracy claim was the only federal claim in the lawsuit. The remaining claims are state law in nature. The Tenth Circuit has held that when federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over state law claims and allow plaintiff to pursue them in state court. Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995) and 28 U.S.C. § 1367(c)(3) (stating that when all federal claims are dismissed, district court may decline to exercise jurisdiction over remaining state claims). Accordingly, the court declines to exercise jurisdiction

---

[2](...continued)
letter put him at risk of injury from other inmates, he testified at his deposition
that he had not been threatened by any other inmates as a result of the letter's
publication. R., Doc. 165, Ex. 2 at 65-67, 70-72. Consequently, we do not need
to consider his endangerment allegation.

over the remaining state law claims.  Therefore, the court hereby dismisses without prejudice this case in its entirety.[3]

R., Doc. 175 at 4-5.

## II.  Analysis

### A.  Summary Judgment Standards.

 "We review the grant of summary judgment de novo, applying the same standard as the district court pursuant to Rule 56(c) of the Federal Rules of Civil Procedure."  *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004).  Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "In applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1257 (10th Cir. 2006) (quotation omitted).

 "In addition, we must construe a pro se appellant's complaint liberally." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation omitted).  But

---

[3]     We note that the district court should have dismissed only the state law claims without prejudice.  Defendants have not cross-appealed to correct this error, however, and Mr. Kennedy is not challenging the dismissal of his state law claims.  As a result, we do not need to address those claims.

"[t]his liberal treatment is not without limits, and this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Id.* (quotation omitted). As a result, in the context of opposing a motion for summary judgment, a pro se plaintiff must strictly comply with the requirements of Rule 56, and those requirements have been articulated by the Supreme Court as follows:

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also* Fed. R. Civ. P. 56(e) (providing that a party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial").

## B.  Conspiracy/Defamation Claim.

"Allegations of conspiracy may . . . form the basis of a § 1983 claim." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). "However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants," *id.*, and "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim," *id.* (quotation omitted).

-7-

Further, "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim." *Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990). Thus, to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990).

As set forth above, the district court found that Mr. Kennedy "offer[ed] no evidence of any 'concerted action' between the defendants to deprive[] him of his constitutional rights," and therefore concluded that he "failed to establish [there] was an agreement among defendants to deprive him of his constitutional rights." R., Doc. 175 at 4. Having thoroughly reviewed the summary judgment record, we agree with the district court that there is insufficient evidence to establish a § 1983 conspiracy. More fundamental, however, is the complete lack of evidence showing a violation of Mr. Kennedy's constitutional rights. *See Dixon*, 898 F.2d at 1449 ("[T]he essence of a § 1983 [conspiracy] claim is the deprivation of the right rather than the conspiracy.").

Construing Mr. Kennedy's allegations liberally, the constitutional right at issue here is the right to procedural due process guaranteed by the Fourteenth Amendment. Specifically, Mr. Kennedy claims that defendants violated his Fourteenth Amendment right to procedural due process when they allowed the contents of the anonymous letter to be published in the local media without affording him a hearing and an opportunity to clear his name by proving that the

-8-

allegations in the letter were false.  Consequently, "it is [Mr. Kennedy's] liberty interests that are at issue: he alleges that the defendants deprived him of those interests without affording him the procedural protections required by the Due Process Clause." *Gwinn*, 354 F.3d at 1216.  As we explained in *Gwinn*:

> "'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1558 (10th Cir. 1993) (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 . . . (1971)).  Damage to one's reputation alone, however, is not enough to implicate due process protections.  *See Paul v. Davis*, 424 U.S. 693, 701 . . . (1976) (stating that "reputation alone, apart from some more tangible interests such as employment, is neither 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause"); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981) ([S]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.").
>
> Instead, a plaintiff asserting that the government has violated the Due Process Clause by impugning his or her "good name, reputation, honor, or integrity," *Jensen*, 998 F.2d at 1558, must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law." *Paul*, 424 U.S. at 710-11 . . . .  This is sometimes described as the "stigma plus" standard.

*Id.*

Here, there is no question the district court properly granted summary judgment in favor of defendant Sexton.  As the court found, "her sole role in the underlying events was limited to receiving the anonymous letter and forwarding it

-9-

to the Sheriff's office." R., Doc. 175 at 4. Further, with regard to defendants Pearson and Smith, we likewise question whether they actually "made" a derogatory statement about Mr. Kennedy when they allowed the contents of the anonymous letter to be published in the local media. However, because Mr. Kennedy has not even come close to showing the "plus" part of the "stigma plus" standard (*i.e.*, "some governmentally imposed burden that significantly altered his . . . status as a matter of state law"), we do not need to decide whether the "stigma" part of the standard was met.

To begin with, the only "plus" alleged by Mr. Kennedy is his claim that he was denied parole in October 2004 because of the publication of the contents of the anonymous letter. But, as set forth above, Mr. Kennedy testified at his deposition that he does not know why the Parole Board denied parole. R., Doc. 165, Ex. 2 at 55-56. Mr. Kennedy also testified that he does not know whether the Parole Board even knew about the two newspaper articles when it denied parole. *Id.* at 62-63, 66-67. Moreover, while Mr. Kennedy complains vociferously about how the district court prevented him from deposing the defendants, Mr. Kennedy never sought any discovery from the Parole Board, and he also failed to request a continuance under Fed. R. Civ. P. 56(f) to obtain such discovery. As a result, there are no "specific facts" in the summary judgment record showing why the Parole Board denied parole in October 2004. Without such evidence, it was legally impossible for Mr. Kennedy to meet his trial burden of satisfying the "plus" part of the "stigma-plus" standard, "an essential element of [his § 1983 defamation] case." *Celotex*, 477 U.S. at 323. Accordingly, for this

reason and for the reasons relied upon by the district court, we conclude that summary judgment was properly entered in favor of defendants on Mr. Kennedy's conspiracy/defamation claim.

### C. Other Issues Raised on Appeal.

Mr. Kennedy also argues that: (1) the district court failed to properly consider the Errata Sheet he completed to make changes and objections to his deposition testimony; and (2) the district court erred in: (a) denying his motion to recuse; (b) denying his motion for appointment of counsel; (c) refusing to compel defendants to produce discovery and be deposed; and (d) permitting Robert Ray Jones, Jr. to enter an appearance as counsel for defendants. We conclude that Mr. Kennedy's arguments lack merit, and we see no abuse of discretion by the district court with regard to any of these matters.

First, there is no basis for concluding that the district court failed to consider the Errata Sheet when evaluating defendants' motion for summary judgment. More importantly, however, the Errata Sheet did not contain any material alterations or additions to Mr. Kennedy's deposition testimony. Second, we agree with defendants that Mr. Kennedy's motion to recuse was based on conclusory and unsubstantiated allegations, with no specific showing of personal bias or prejudice. Third, Mr. Kennedy has failed to show that this is one of those extreme cases where the denial of his motion for appointment of counsel resulted in fundamental unfairness. Fourth, we see no abuse of discretion by the district court in any of its discovery rulings. Defendants fully responded to Mr. Kennedy's written interrogatories and requests for admission, and none of the

district court's discovery rulings had any bearing on Mr. Kennedy's failure of proof with regard to the Parole Board. Finally, Mr. Kennedy's claim that there was something improper about Mr. Jones's entry of appearance is completely baseless and without any foundation.

Mr. Kennedy is also challenging the district court's denial of his motion for rehearing. Mr. Kennedy filed his motion within ten days of the district court's entry of summary judgment, and, "[r]egardless of how it is styled, a post-judgment motion filed within ten days of entry of judgment that questions the correctness of the judgment is properly construed as a Rule 59(e) motion." *Venable v. Haislip*, 721 F.2d 297, 299 (10th Cir. 1983). "We review a district court's ruling on a Fed. R. Civ. P. 59(e) motion under an abuse of discretion standard." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). Under that standard, "[a] Rule 59(e) motion to alter or amend the judgment should be granted only to correct manifest errors of law or to present newly discovered evidence." *Id.* (quotation omitted). Mr. Kennedy "has not presented any new evidence on appeal, nor do we discern manifest error, and thus [he] has failed to show the district court abused its discretion in denying the motion." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000).

The judgment of the district court is AFFIRMED.  We also DENY Mr. Kennedy's motion for declaratory judgment and his motion to compel production of record, both of which were filed in this court on July 27, 2007.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge