**Lawrence A. WELCH, Jr.**

v.

**BOARD OF PROFESSIONAL RE-SPONSIBILITY FOR THE SU-PREME COURT OF TENNESSEE.**

Supreme Court of Tennessee,
at Nashville.

Feb. 1, 2006 Session.

May 19, 2006.

Lawrence A. Welch, Jr., Greeneville, Tennessee, Pro Se.

Sandy Garrett, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

## OPINION

WILLIAM M. BARKER, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

This is a direct appeal, pursuant to Tennessee Supreme Court Rule 9, section 1.3, from the judgment of the chancery court approving the order of a hearing committee of the Board of Professional Responsibility that suspended Lawrence A. Welch, Jr., from the practice of law for three years. The chancery court upheld the decision of the hearing committee, adopting its findings of fact and conclusions of law and approving the three-year suspension. On appeal to this Court, Mr. Welch argues that: 1) the trial court erred in denying his motion to dismiss; 2) the trial court erred in basing its decision on the transcript from the hearing before the Board; 3) the trial court erred in admitting the report of

the expert witness; 4) he was denied effective assistance of counsel; 5) his right to equal protection was violated; and 6) the evidence did not support the hearing committee's decision. Upon review of the record and applicable law, we conclude that none of the issues raised by Mr. Welch warrant relief and that the three-year suspension is appropriate. Accordingly, we affirm the judgment of the chancery court.

### Factual and Procedural Background

Lawrence A. Welch, Jr., ("Mr.Welch") is an attorney licensed to practice law in Tennessee since 1991. Mr. Welch began working for the law firm of Milligan & Coleman in Greeneville, Tennessee, in December 1990. Other recent associates were accepted as partners at Milligan & Coleman after only two years with the firm. However, after four years of working there, Mr. Welch had yet to be made partner.

Several Milligan & Coleman partners met with Mr. Welch in July 1994 to discuss Mr. Welch's status with the firm. Tom Kilday advised Mr. Welch that the firm had decided not to offer him a partnership at that time. There had been increasing tension between Mr. Welch and the law firm as the law firm became unhappy with certain behaviors of Mr. Welch. For example, in the summer of 1994, the law firm determined that Mr. Welch was seeking reimbursement for mileage and expenses that were not really necessary, and the firm believed that he was abusing the reimbursement process to supplement his income. Mr. Kilday instructed the firm's bookkeeper not to reimburse Mr. Welch for any further expenses without the approval of a partner.

Soon after his meeting with the partners, Mr. Welch submitted his resignation to Milligan & Coleman. When he left the firm, Mr. Welch retained his keys to Milligan & Coleman's offices and to the Bank of America Building in which the offices were located, giving him access to the offices. After he left, the firm discovered that a file was missing. They also discovered that Mr. Welch had, without authority, reduced a bill by $5,000 a few days before he left.

On or about December 12, 1996, a memorandum (referred to herein as "the memo") dated September 28, 1995, purportedly from Tom Kilday, a partner with Milligan & Coleman, to Judge John Wilson, a circuit judge in Greeneville, was mailed to attorney John T. Milburn Rogers, also of Greeneville. The memo was stamped "attorney work product" and "private and confidential." The parties concede that the content of the memo is not true. If it were true, it would implicate Judge Wilson and the members of Milligan & Coleman in a criminal conspiracy pursuant to which Milligan & Coleman would assist Judge Wilson in disposing of a lawsuit against him, and in return, Judge Wilson would rule in a pending civil case in a manner favorable to Milligan & Coleman's client.

Included with the memo was an anonymous note allegedly from a secretary at Milligan & Coleman, which read:

Dear Mr. Rogers:

I need your help. I'm afraid we'll all end up in jail if Mr. Kilday isn't stopped. This came from one of his secret files that stays locked. Can you send the Sheriff with a subpoena to take the files before he can get rid of them? Then you can see proof how he pays his girl friend (Ginger Tyler) to change depositions and how he pays police as "expert witness" so they will help him win. Can you subpoena Vicki and Mr. Welch too? They know more than I do. Please help.

A Secretary.

After receiving the memo and accompanying note in the mail, Mr. Rogers gave the documents to District Attorney General Berkeley Bell. General Bell referred the matter to the Tennessee Bureau of Investigation ("TBI") which began an investigation into the criminal allegations.

During the TBI's investigation, Robert Muehlberger, Forensic Document Analyst and Manager of the Forensic Laboratory for the United States Postal Inspection Service, analyzed typing samples taken from the receptionist's typewriter at the Round Table Office Complex in Greeneville. He concluded that the memo and its attachments, as well as the envelope containing the memo, were typed using the same printwheel element that was contained in the receptionist's typewriter at the Round Table Office Complex where Mr. Welch leased office space during the time the memo was mailed, and to which Mr. Welch had access.

TBI Special Agent Greg Monroe concluded his summary of the investigation as follows:

> It is reporting agent's opinion that the letter is fraudulent; forged to appear to be an office document from the law firm of Milligan and Coleman. Reporting agent has identified only one subject who may have produced the document. Attorney Larry Welch had the means, motive, and opportunity to produce the forged document. . . .

It was at this time that the Mr. Welch's suspected misconduct was reported to the Board of Professional Responsibility ("Board").

The memo suggests that Milligan & Coleman was offering assistance to Judge Wilson regarding a lawsuit filed against him by Susan Payne, his former secretary. Ms. Payne did in fact file a lawsuit against Judge Wilson on September 22, 1995, approximately six days before the date on the memo. Susan Payne consulted attorney Bill Hall Bell about her claims against Judge Wilson, but Mr. Bell declined to represent her. Mr. Welch was a friend of Bill Hall Bell and testified that someone told him Ms. Payne had a complaint against Judge Wilson. However, Judge Wilson never talked with anyone at Milligan & Coleman about the complaint against him, and no member of the Milligan & Coleman firm had any knowledge of any claims by Susan Payne against Judge Wilson until they were shown the memo by the TBI in the summer of 1997.

The memo contains certain words and phrases commonly used by Mr. Kilday, such as "undertake the necessary," which is used twice in the memo. This unusual phrase would have been known only by someone who had worked with Mr. Kilday or was otherwise very familiar with his writing. Mr. Welch would have known about Mr. Kilday's use of this phrase. The memo also contains the term "TFMIC," which Milligan & Coleman used to refer to Tennessee Farmers Mutual Insurance Company. The "TFMIC" acronym would not be widely known outside Milligan & Coleman or another law firm representing the insurer because most people referred to the company as "Farm Bureau." Mr. Welch was familiar with the term "TFMIC."

The memo references "Barkley Bell," the local district attorney and brother of Bill Hall Bell. General Bell's first name is Berkeley but is misspelled in the memo as "Barkley." A time-slip of Mr. Welch's from Milligan & Coleman made reference to General Bell and used the same misspelling of his first name, Barkley.

The memo references a meeting at Mr. Kilday's cabin, as well as an attached map. Mr. Kilday does in fact have a cabin, and Mr. Welch attended a firm picnic at Mr.

Kilday's cabin in the summer of 1994. Mr. Kilday gave Mr. Welch a map to the cabin prior to the summer 1994 picnic. This map was only given to other attorneys and law clerks working at the firm.

The memo also reflects what appear to be copied "post-it" notes containing authentic handwriting of Mr. Kilday and Mr. Coleman. "Post-it" notes containing Mr. Kilday's or Mr. Coleman's handwriting would not have been disseminated outside Milligan & Coleman.

The testimony offered by Judge Wilson also implicated Mr. Welch as the individual who drafted and sent the memo. Judge Wilson testified that Mr. Welch had great hatred for Mr. Kilday and Mr. Coleman. Judge Wilson also testified that Mr. Welch appeared at the Hawkins County Courthouse in Rogersville the day after the TBI interviewed Judge Wilson and told Judge Wilson, "I understand you had some visitors." Judge Wilson was very surprised that Mr. Welch knew the TBI had talked with him because Judge Wilson had not told anyone about his meeting with the TBI. At the hearing, Mr. Welch denied going to the Hawkins County Courthouse to ask Judge Wilson about his TBI interview.

Judge Wilson also testified that he told Mr. Welch that the TBI believed that Mr. Welch was involved in preparing the memo; that the TBI thought Mr. Welch's typewriter was used to prepare the memo;

and that the TBI believed that Bill Hall Bell was also involved in the preparation of the memo. These statements apparently occurred during at least two different conversations between Judge Wilson and Mr. Welch, and Judge Wilson testified that Mr. Welch did not answer and made no response to any of the foregoing comments implicating Mr. Welch and Mr. Bell. At the hearing, Mr. Welch denied failing to respond to Judge Wilson concerning Mr. Welch's possible involvement and testified, "I didn't just stand there. I told him flat out, I did not do it."

On October 21, 1999, the Board filed a Petition for Discipline against Mr. Welch relating to the forged memorandum which Mr. Welch allegedly prepared and distributed in violation of Tennessee Supreme Court Rule 8, Disciplinary Rules [1] ("DR") 1–102(A)(3), (4), (5), and (6) [2] and DR 8–102(B). [3]

The hearing on Mr. Welch's petition for discipline began on January 15, 2001, and concluded January 18, 2001. In its March 23, 2001, judgment, the hearing committee found that Mr. Welch had drafted and sent the memo and recommended that Mr. Welch be suspended from the practice of law for a period of three years. Mr. Welch filed a notice of appeal by Petition for Writ of Certiorari on May 21, 2001, appealing the hearing committee's judgment.

---

**1.** The proceedings in this case are governed by the Code of Professional Responsibility previously set forth in Rule 8 of the Tennessee Supreme Court Rules (1999). The Code was replaced on March 1, 2003, by the Rules of Professional Conduct.

**2.** DR 1–102(A) provides:

A lawyer shall not:

. . . .

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

**3.** DR 8–102(B) provides that "A lawyer shall not knowingly make accusations against a judge or other adjudicatory officer."

Mr. Welch filed a motion in the trial court to exclude the report of the forensic document analyst. The trial court denied the motion to exclude the report because Mr. Welch's attorney had stipulated to the report's admissibility before the hearing committee. Mr. Welch also filed a motion to dismiss based on an alleged settlement of the charges against him.

On July 15, 2004, the trial court affirmed the judgment of the hearing committee of the Board, suspending Mr. Welch for three years. The court concluded in its order:

> This Court is convinced beyond a shadow of any doubt that the Respondent is guilty as charged based upon the facts proven by the Disciplinary Board, and that he did these acts with the evil intent to harm and discredit his former associates and his friend, Judge John K. Wilson. It was stipulated at the hearing and entirely clear and unquestioned that all the alleged facts and conduct in this memo were false and with absolutely no basis in fact, and that the Respondent made up this conduct in order to harm the law firm and his friend. He violated this friendship and violated all confidence reposed in him by members of this firm and his associates, and in the opinion of this Court this man has a serious mental problem and should seek serious counseling for his own good.

From this judgment, Mr. Welch filed his notice of direct appeal to this Court pursuant to Tennessee Supreme Court Rule 9, section 1.3.

### Analysis

*I. Did the trial court err in denying Mr. Welch's motion to dismiss?*

On July 9, 2004, Mr. Welch's counsel filed a Motion to Dismiss with the trial court asserting that the disciplinary charges against Mr. Welch had been set-tled in June 1999. Disciplinary Counsel for the Board orally responded to this motion on the morning of the trial. According to Disciplinary Counsel, Mr. Welch had submitted a settlement offer to a hearing committee in June 1999 on a prior petition for discipline. The Board declined to accept Mr. Welch's conditional guilty plea. The Board then filed a non-suit of that petition for discipline and then re-filed the petition with a different hearing committee. This latter petition is the subject of the current appeal.

The trial court denied Mr. Welch's motion to dismiss on the ground that the Board had rejected the proposed conditional guilty plea and that the prior petition for discipline had been non-suited.

Rule 9, section 6.1 of the Rules of the Supreme Court of the State of Tennessee provides:

> An attorney against whom formal charges have been served may at any stage of the proceedings before the Board, hearing committee or trial court, thereafter tender a conditional guilty plea to the petition or to a particular count thereof in exchange for a stated form of punishment. Such a tendered plea shall be submitted to the Disciplinary Counsel and *approved or rejected by the Board upon recommendation of the hearing committee* if the matter has been assigned for hearing, or shall be approved or rejected by the trial court if a petition for certiorari has been filed; subject, however, in either even, to final approval or rejection by this Court if the stated form of punishment includes disbarment, suspension or public reprimand.

(Emphasis added.)

Mr. Welch claims that Rule 9, section 6.1 does not apply to him because he never tendered a "conditional guilty plea" but rather, "the matter was simply settled as

other cases are each and every day." Mr. Welch then claims that the agreement was "unilaterally ignored" after having been accepted by the hearing committee.

There is no provision contemplated under the disciplinary rules for a settlement other than for the "conditional guilty plea" set out in section 6.1. What Mr. Welch attempts to label as an ordinary settlement was in fact a conditional guilty plea, which must be approved by the Board in order for it to dispose of the charges against him.[4] In this case, the agreement was not approved, so the matter was never settled. As such, the trial court did not err in denying Mr. Welch's motion to dismiss.

## II. Did the trial court err in basing its review on the transcript of the hearing?

█ Mr. Welch argues that the trial court erred in basing its decision on the transcript of the hearing before the Board's hearing committee because, according to him, much of the evidence from the hearing was inadmissible. In his brief, Mr. Welch points to approximately fifty-two excerpts from various witnesses' testimony as representative of the alleged inadmissible evidence.

However, during the trial before the hearing committee, Mr. Welch's counsel only objected to two of those fifty-two excerpts from the witnesses' testimony. The hearing committee sustained one objection made by Mr. Welch's attorney and allowed the other answer after overruling Mr. Welch's second objection. To deter-

mine whether Mr. Welch waived the issue of the admissibility of the evidence by not objecting before the hearing panel, we must determine if the Tennessee Rules of Evidence apply in this case.[5]

While, by express terms, the Tennessee Rules of Evidence "govern evidence rulings in all trial courts of Tennessee," Tenn. R. Evid. 101, there is nothing in the rules to prevent their application in other venues. A review of the disciplinary process in Tennessee convinces us that there is no logical reason why the Rules of Evidence should not apply to a hearing before the hearing committee and any subsequent appeal to the circuit or chancery court.

When a formal complaint of discipline is filed against an attorney and the matter is not settled, the attorney may request "the opportunity to be heard in litigation" at a formal hearing before the committee. Tenn. Sup.Ct. R. 9, § 8.2. The attorney has the right to be represented by counsel, to cross-examine witnesses, and to present evidence in his own behalf. *Id.* The hearing committee hears and weighs the evidence, considers the applicable law, and renders a decision. Specifically, "[t]he hearing committee shall, in every case, submit its findings and judgment, *in the form of a final decree of a trial court,* to the Board...." Tenn. Sup.Ct. R. 9, § 8.3 (emphasis added). Much like the decision of a trial court, this decision of the hearing committee is final and binding upon the parties, unless set aside by a higher authority. Just as the decision of a trial court may be appealed to the Court of

---

4. As the saying goes, "if it looks like a duck, walks like a duck, and quacks like a duck, it must be a duck." *See Strength v. Alabama Dept. of Finance,* 622 So.2d 1283, 1289 (Ala. 1993); *City of Laramie v. Facer,* 814 P.2d 268, 273 (Wyo.1991); *see also* The Oxford Dictionary of Quotations 624:17 (1999).

5. On April 25, 2006, Rule 9 of the Tennessee Rules of the Supreme Court was amended, effective July 1, 2006. As amended, section 23.3 specifically states that "[e]xcept as otherwise provided in these Rules, the Tennessee Rules of Civil Procedure and the Tennessee Rules of Evidence apply in disciplinary cases."

Appeals or Court of Criminal Appeals, the decision of the hearing committee may be appealed to the circuit or chancery court.

Accordingly, we are persuaded that the application of the Rules of Evidence will serve to further their stated objective, which is "to secure the just, speedy, and inexpensive determination of proceedings." Tenn. R. Evid. 102. Thus, for the above-stated reasons, we hold that the Rules of Evidence shall apply to proceedings before the Board's hearing committee.

■ With respect to objections to the admission of evidence, Rule 103(a) of the Tennessee Rules of Evidence provides:

(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears in the record, stating specific ground of objection if the specific ground was not apparent from the context; ...

■ Generally, failure to make a timely, specific objection in a trial court prevents a litigant from challenging the introduction of inadmissible evidence for the first time on appeal. *See M. Lewis & Sons v. Illinois Cent. R. Co.,* 150 Tenn. 94, 259 S.W. 903, 904 (1924); *Grandstaff v. Hawks,* 36 S.W.3d 482, 488 (Tenn.Ct.App.2000); *Wright v. United Serv. Auto. Assn.,* 789 S.W.2d 911, 914 (Tenn.Ct.App.1990). The rationale for this rule has been explained as follows:

Any other rule would result in setting a trap for the other side of the controversy. When objection is made to evidence, and specified, this notification may enable opposing counsel to obviate it, and thus make the evidence competent, but, if the party making an erroneous objection should be allowed to withhold a good objection and make that in the appellate court, where there can be no possibility of avoiding the difficulty by other evidence, this would give a very great advantage to the party so withholding his real objection, and result in corresponding disadvantage and injustice to the opposing litigant.

*Middle Tennessee R. Co. v. McMillan,* 134 Tenn. 490, 184 S.W. 20, 24 (1916). This rationale for requiring objections to evidence to be made at the first available opportunity applies equally to proceedings before the hearing committee as it does to proceedings in a trial court.

Because Mr. Welch's counsel did not object to the admission of the evidence before the hearing committee, Mr. Welch cannot contest its admissibility on appeal. As for the one objection that the hearing committee sustained,[6] the fact that the objection was sustained would have been part of the record considered by the trial court. Furthermore, Mr. Welch has shown no prejudice by the inclusion of that one portion of the evidence in light of the overwhelming admissible evidence of his guilt.

### III. Did the trial court err in admitting the expert witness report?

■ Mr. Welch contends that the trial court erred in admitting the report of Rob-

---

**6.** The objection was sustained on the ground that the evidence was hearsay. Ron Woods, an attorney with Milligan & Coleman, was explaining some problems that the firm was having with Mr. Welch, specifically regarding a check that was not delivered to Ray Adams.

Mr. Woods stated that Mr. Adams "let [him] know that he had very—had had lots of difficulties with Mr. Welch." Mr. Welch's attorney objected, and the hearing committee sustained the objection.

ert Muehlberger, the forensic document analyst, over his objection because the report was unsworn and Mr. Welch was denied access to the underlying materials so as to hire his own expert for further scientific study. Mr. Welch objected to admission of the report before the trial court. However, the court overruled his objection on the ground that the report's admission had been stipulated to by Mr. Welch's attorney at the proceeding before the hearing committee.

Again, by failing to object to the report before the hearing committee, Mr. Welch has waived his right to object to its admission on appeal. *See* Tenn. R. Evid. 103(a); *Grandstaff,* 36 S.W.3d at 488; *Wright,* 789 S.W.2d at 914.

## IV. Ineffective Assistance of Counsel

■ Mr. Welch argues that he received ineffective assistance of counsel in the trial court, alleging that his attorney "did not follow [his] instructions in the preparation and presentation of his defense." His specifically takes issue with his attorney's failure to depose or call as witnesses numerous people whom he thought would be helpful to his defense.

Mr. Welch cites to the general rule that in order to establish a claim for ineffective assistance of counsel, the party must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense. *See Burnett v. State,* 92 S.W.3d 403, 408 (Tenn.2002). However, this is the test for showing ineffective assistance of counsel in a *criminal* case.

■ While ineffective assistance of counsel is a proper ground for granting relief in a criminal case, there is no such constitutional guarantee to effective counsel in a civil case.

Without question in criminal cases, ineffective assistance of counsel is a proper ground for granting post-conviction relief. The doctrine is based upon the Sixth Amendment to the United States Constitution, which grants a criminal defendant the right to assistance of counsel. This has quite properly been construed to mean assistance of effective counsel.

There is no such constitutional mandate as to civil cases....

*Thornburgh v. Thornburgh,* 937 S.W.2d 925, 926 (Tenn.Ct.App.1996) (citations omitted).

Because there is no right to effective assistance of counsel in a civil case, Mr. Welch is not entitled to relief based upon his allegations of ineffective assistance of counsel.

## V. Equal Protection

■ Mr. Welch argues that his constitutional right to equal protection was violated by the Board's failure to investigate and prosecute claims of misconduct concerning the attorneys at Milligan & Coleman. This assertion is irrelevant to the issue of whether Mr. Welch's license should be suspended based on his own misconduct. Moreover, he raises this argument for the first time on appeal. "It has long been the general rule that questions not raised in the trial court will not be entertained on appeal." *Adoption of Female Child, E.N.R.,* 42 S.W.3d 26, 32–33 (Tenn.2001); *see also Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn.1983); *City of Elizabethton v. Carter County,* 204 Tenn. 452, 321 S.W.2d 822, 827 (1958).

## VI. Did the trial court err in affirming the hearing committee?

■ The hearing committee recommended that Mr. Welch be suspended from the practice of law for three years.

The committee found that Mr. Welch had drafted and distributed the fraudulent memo in violation of DR 1–102(A)(3), (4), (5), and (6) and DR 8–102(B). The chancery court adopted the hearing committee's findings of fact and conclusions of law and affirmed the three-year suspension.

■ The trial court, in ruling on an appeal from the Board's hearing committee, "shall review the evidence before the hearing committee, as well as the proof either party may introduce, and shall determine the facts by the preponderance of the evidence." *Patty v. Bd. of Prof'l Responsibility*, 90 S.W.3d 641, 644 (Tenn. 2002); *see* Tenn. Sup.Ct. R. 9, § 1.3. "Where the trial judge bases his or her decision on the same evidence that is before the hearing committee, the trial judge must affirm the committee '[u]nless that evidence preponderates against the findings by the Committee.'" *Cohn v. Bd. of Prof'l Responsibility*, 151 S.W.3d 473, 481 (Tenn.2004) (quoting *Gannon v. Bd. of Prof'l Responsibility*, 671 S.W.2d 835, 837 (Tenn.1984)) (footnote omitted).

■ Our review on appeal is limited to "the transcript of the record from the circuit or chancery court, which shall include the transcript of evidence before the hearing committee." Tenn. Sup.Ct. R. 9, § 1.3. We review the lower court's decision "de novo with a presumption of correctness unless the preponderance of the evidence is contrary to the trial court's action." *Patty*, 90 S.W.3d at 644 (citing *Murphy v. Bd. of Prof'l Responsibility*, 924 S.W.2d 643 (Tenn.1996)); *see also Cohn*, 151 S.W.3d at 481.

The evidence in this case overwhelmingly supports the conclusion that Mr. Welch drafted and sent the memo that defamed Judge John Wilson and the attorneys at Milligan & Coleman. The memo, the enclosed note, and the envelope were all typed on a typewriter that matched the

one in the office building in which Mr. Welch leased office space and to which Mr. Welch had access. The memo contained information that could have only been known by someone who had worked for Milligan & Coleman. Mr. Welch had left Milligan & Coleman on unfriendly terms and was known to dislike Mr. Kilday and Mr. Coleman. And as the investigating agent for the TBI concluded, "[he] identified only one subject who may have produced the document. Attorney Larry Welch had the means, motive, and opportunity to produce the forged document."

It is undisputed that if Mr. Welch drafted the memo, he would be guilty of violating disciplinary rules 1–102(A)(3), (4), (5), and (6) and 8–102(B). The trial court not only found that Mr. Welch drafted and mailed the memo, but that he did so "with evil intent to harm and discredit his former associates and his friend, Judge John K. Wilson." Likewise, the hearing committee had found that "the preparation and mailing of the memo cannot be explained away as a practical joke gone bad or an error in judgment committed in a fit of anger. Rather, it is the product of a very troubled mind that was carried out deliberately after significant forethought and preparation."

The facts of this case are undeniably unique, and therefore there is little precedent for determining the extent of discipline warranted. However, given the extremely libelous nature of the memo and the nefarious intent with which it was prepared and sent, a three-year suspension is certainly not excessive.

Before Mr. Welch will be allowed to practice law in this State following his suspension, he must meet the requirements of Tennessee Supreme Court Rule 9, section 19. Any attorney having been suspended for one year or more may not

resume practice until reinstated by order of the Supreme Court. Tenn. Sup.Ct. R. 9, § 19.1. Petitions for reinstatement are to be filed no more than ninety days prior to the time the attorney is eligible for reinstatement and shall be filed with the Board and served upon Disciplinary Counsel. The Board then refers the petition to a hearing committee, who shall schedule a hearing. At the hearing,

> the petitioner shall have the burden of demonstrating by clear and convincing evidence that the attorney has the moral qualifications, competency and learning in law required for admission to practice law in this State and that the resumption of the practice of law within the State shall no be detrimental to the integrity and standing of the bar or the administration of justice, or subversive to the public interest. . . .

Tenn. Sup.Ct. R. 9, § 19.3.

### Conclusion

In sum, we hold that the trial court properly approved the decision of Board's hearing committee to suspend Mr. Welch for a period of three years. The evidence supports the fact that Mr. Welch drafted and sent the fraudulent memo that purported to implicate a sitting circuit court judge and members of his former law firm in a criminal conspiracy. The trial court did not err in relying on the transcript of the hearing or in admitting the report of the expert witness because these objections were raised for the first time on appeal. The trial court did not err in denying the motion to dismiss because there had never been a conditional guilty plea entered by Mr. Welch and accepted by the Board. Finally, Mr. Welch's arguments regarding ineffective assistance of counsel and equal protection violations are without merit. As such, we affirm the decision of the trial court suspending Mr.

Welch from the practice of law for three years.

Costs of this appeal are taxed to Lawrence A. Welch, Jr., and his surety, for which execution may issue if necessary.