# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### August 16, 2016 Session

## RAY DUFFY, ET AL. v. DANNY ELAM

**Direct Appeal from the Circuit Court for McNairy County**
**No. 15-CV-1     J. Weber McCraw, Judge**

---

**No. W2015-01456-COA-R3-CV – Filed August 24, 2016**

---

This appeal involves an unauthorized sale of a trailer by a third party.  The circuit court held that the original owner of the trailer, who holds the certificate of title, is entitled to possession of the trailer rather than the party claiming to be a bona fide purchaser.  The purchaser appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and ARNOLD B. GOLDIN, JJ., joined.

Benjamin Scott Harmon, Savannah, Tennessee, for the appellant, Danny Elam.

Paul Lee Simpson and Ross Mitchell, Selmer, Tennessee, for the appellees, Patrick Hynes and Ray Duffy.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Patrick Hynes and his brother-in-law Raymond Duffy (collectively, "Plaintiffs") operated a business called International Turf Applicators, which contracted with golf courses across the Southeast.  In 2001, International Turf Applicators purchased a 1999 Clark 53-foot drop-deck dovetail trailer for $48,000.  Plaintiffs used the trailer for hauling equipment in connection with their business.  In 2006, Plaintiff Duffy individually purchased the trailer from International Turf Applicators.

In 2007, Plaintiffs met Charles Smith.  Mr. Smith convinced Mr. Hynes and some of his family members to invest in a limestone operation he owned called Tennessee

Materials. At that time, the aforementioned Clark trailer was located in New Orleans, Louisiana. Tennessee Materials owned some equipment that was also located in New Orleans, so Mr. Hynes permitted Tennessee Materials to use the trailer for transporting the equipment back to Tennessee. Thereafter, Tennessee Materials maintained possession of the trailer for the next few years.

The relationship between Mr. Smith and Mr. Hynes deteriorated. Over the course of two years, Mr. Hynes repeatedly requested the return of the trailer to no avail. Admittedly, he did not aggressively pursue action against Mr. Smith because he did not want to "ruffle his feathers" or jeopardize his interest in Tennessee Materials. In October 2011, however, Mr. Hynes had an attorney send a letter to Mr. Smith formally demanding the return of the trailer.[1] Mr. Smith told Mr. Hynes that the trailer had been stolen.

Mr. Hynes reported the incident to the local sheriff's department, and within 48 hours, law enforcement personnel located the trailer in another county on property belonging to Danny Elam ("Defendant"). Defendant operates Elam Trucking, a trucking business that buys, rebuilds, and sells trailers. Law enforcement officers accompanied Mr. Hynes to Defendant's property. By all accounts, Defendant was cooperative and forthcoming. He informed Mr. Hynes and the investigators that Mr. Smith had hired him to haul the trailer and its cargo, consisting of a large barge, to a local scrapyard. According to Defendant, the trailer was parked in a gravel pit and had sustained heavy damage from the barge. Defendant worked on the trailer for a couple of days in order to repair it to the point that it could be hauled to the scrapyard. Defendant learned that Mr. Smith intended to sell the trailer to the scrapyard along with the barge, as the scrapyard had offered $2,000 for the trailer itself. Defendant bought the trailer from Mr. Smith for $2,000 instead of leaving the trailer at the scrapyard. He produced a "Bill of Sale" from Tennessee Materials dated June 23, 2012, which listed three "Scrap Trailers" as being sold to Defendant, including the 53-foot trailer at issue in this case. Mr. Smith signed the bill of sale on behalf of Tennessee Materials indicating that the trailers were "[his] own and free of all claims and offset of any and all kinds." According to Defendant, he asked Mr. Smith about obtaining the certificate of title to the trailer, and Mr. Smith said that he would bring it to him, but he never did.

Mr. Hynes produced a certificate of title listing Mr. Duffy as the owner of the trailer. When Defendant learned of Plaintiffs' claim to the trailer, he offered to release the trailer to Mr. Hynes if he paid $7,500 for the repairs Defendant had completed. Mr. Hynes admittedly "felt sorry" for Defendant and thought that he may have been "hoodwinked" by Mr. Smith. Mr. Hynes acknowledged that Defendant made $7,500 in

---

[1]Mr. Hynes and his brother-in-law Mr. Duffy are both plaintiffs in this action, but only Mr. Hynes testified at trial. Mr. Duffy was a resident of Florida and executed a special durable power of attorney authorizing Mr. Hynes to handle all legal matters relating to this case involving the trailer.

repairs and improvements to the trailer, but his position was that Plaintiffs should not have to pay for the repairs and improvements because they did not authorize them. Mr. Hynes believed that Defendant should not have made improvements to a trailer for which he had no title. As a result, he declined to pay Defendant the amount he demanded for return of the trailer.

Plaintiffs filed this action in general sessions court seeking to recover the trailer, damages, and attorney's fees from Defendant. Plaintiffs did not sue Mr. Smith because he was under federal investigation and also in bankruptcy. The general sessions court ruled in favor of Defendant on the basis that he was "a good faith purchaser for value" and therefore the owner of the trailer. Plaintiffs appealed to circuit court. A bench trial was held on June 25, 2015. Plaintiffs asserted that they had the superior right to the trailer because they held the certificate of title; Defendant asserted that he had the superior claim to the trailer because he was a bona fide purchaser for value. However, the parties did not cite any legal authority in support of their respective positions.

The trial court ultimately ruled in favor of Plaintiffs and ordered Defendant to return the trailer, but it permitted Defendant to retain any improvements he made to the trailer that could be easily removed.[2] The trial court reasoned that "the Title-Holder is the legal owner of a piece of property, regardless of Bill of Sale or customary practice." It made no finding regarding whether Defendant was a bona fide purchaser. Defendant timely filed a notice of appeal.

## II. ISSUES PRESENTED

Defendant presents the following issues, slightly re-worded, for review on appeal:

1. Did the trial court err by failing to find that Defendant Elam was a bona fide purchaser for value and without notice where the proof demonstrated that the trailer was of scrap value, the fair market value for scrap was paid, and Defendant received a Bill of Sale indicating that the trailer was free of all claims and offsets of any kind?

2. Did the trial court err in placing inappropriate weight upon factors that are not included in a legal determination of bona fide purchaser status?

3. Did the trial court err by failing to recognize Plaintiffs' burden of proof necessary to avoid the transfer in question, as the evidence failed to

---

[2]Defendant testified that he had invested a total of $20,670 in the trailer by the time of trial, including expenditures for ramps, wheels, and other items that could be removed if he was required to return the trailer to Plaintiffs.

establish a prima facie showing of bad faith on the part of Defendant Elam?

4.      Did the trial court err in failing to find that Plaintiff Duffy was estopped from seeking recovery from Defendant Elam, where the evidence showed that Smith acted with actual or apparent authority to bind the company, Tennessee Materials, to the sale of the trailer, and where Defendant relied upon that authority?

For the following reasons, we affirm the decision of the circuit court and remand for further proceedings.

## III. STANDARD OF REVIEW

A trial court's findings of fact from a bench trial are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d); *In re Estate of Ledford*, 419 S.W.3d 269, 277 (Tenn. Ct. App. 2013). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005)(citation omitted). Appellate courts afford trial courts considerable deference when reviewing issues that hinge on the credibility of witnesses because trial courts are "uniquely positioned to observe the demeanor and conduct of the witnesses." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citation omitted). However, we review the trial court's resolution of legal questions de novo with no presumption of correctness. *1963 Jackson, Inc. v. De Vos*, 436 S.W.3d 278, 286 (Tenn. Ct. App. 2013).

## IV. DISCUSSION

Although the parties did not cite any legal authority before the trial court, they agree on appeal that the Uniform Commercial Code ("UCC"), Tenn. Code Ann. § 47-2-101, *et seq.*, governs the transaction at issue as a sale of goods. Article 2 of the UCC sets forth provisions that govern certain sales transactions involving goods. *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 797 (Tenn. Ct. App. 2012). On appeal, Defendant relies on one particular statute within Article 2 of the UCC, Tennessee Code Annotated section 47-2-403. Defendant's argument regarding this statute is difficult to determine from his brief. He mentioned the statute only in a footnote, where he quoted the text in full. However, Defendant emphasized the second and third subsections of the statute with bold font and underlining. Those sections provide:

(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer

in ordinary course of business.

(3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Tenn. Code Ann. § 47-2-403(2)(3). Defendant's brief suggests that this statute applies because "[t]he transaction at issue here occurred within the normal course of [the] respective businesses [of Tennessee Materials and Elam Trucking]." Defendant's position, then, as we understand it, is that Plaintiffs entrusted possession of the trailer to Tennessee Materials and/or Mr. Smith, and therefore, Tennessee Materials and/or Mr. Smith had the power to transfer all of Plaintiffs' rights to Defendant if he was "a buyer in ordinary course of business." Tenn. Code Ann. § 47-2-403(2).

The entrustment statute does not provide relief to Defendant under the circumstances presented here. The majority of Defendant's argument on appeal centers on whether he should be considered a bona fide or good faith purchaser within the meaning of the relevant statutes. However, purchasing in good faith and for value, "by itself, is not sufficient to entitle the buyer to the protection of U.C.C. § 2-403(2)." 3A *Lawrence's Anderson on the Uniform Commercial Code* § 2-403:100 (3d. ed.) (hereinafter, "*Anderson U.C.C.*"); *see also Ballard v. Wetzel*, No. 03A01-9705-CH-00189, 1997 WL 650878, at *2 (Tenn. Ct. App. Oct. 16, 1997) ("status as a good faith purchaser for value, alone, does not establish good title"). The entrustment statute "imposes qualifications both in terms of the status of the seller and the circumstances surrounding the sale." *Anderson U.C.C.* § 2-403:100. Specifically, the entrustment statute applies to those who entrust possession of goods "to a merchant who deals in goods of that kind." Tenn. Code Ann. § 47-2-403(2). In turn, the statute protects "a buyer in ordinary course of business" who purchases from the "merchant who deals in goods of that kind." *Id.* A "buyer in the ordinary course of business" means "a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, *in the business of selling goods of that kind*." Tenn. Code Ann. § 47-1-201(a)(9) (emphasis added). A merchant who "deals in goods" should be construed as "one who is engaged regularly in selling or leasing goods of the kind." *Anderson U.C.C.* § 2-403:73. "The limitation of U.C.C. § 2-403 to a merchant who deals in the particular kind of goods shows that mere possession does not give the possessor the power to transfer title[.]" *Id.* Because "the entrustment provision is dependent upon the entrustee's dealing in goods of the kind in question," it is not operative when the sale in question is a casual sale by a casual seller who would not qualify as dealing in goods of

5

that kind.  *Anderson U.C.C.* § 2-403:81.

The record contains no evidence to demonstrate that Mr. Smith was a merchant who dealt in trailers of the kind at issue here.  Mr. Hynes testified that Mr. Smith operated Tennessee Materials as a limestone operation.  Although Mr. Hynes mentioned that he transferred the title to some other trailers *to* Mr. Smith, and Defendant purchased a total of three scrap trailers from Mr. Smith according to the bill of sale, the evidence simply does not support a finding that Mr. Smith or Tennessee Materials was "in the business of selling goods of that kind" on a regular basis.  *See* Tenn. Code Ann. § 47-1-201(a)(9).  To the contrary, the record suggests that Mr. Smith's sale of the scrap trailer to Defendant was an isolated casual sale.  As such, Defendant is not entitled to the protection of the entrustment statute regardless of whether he might have purchased the trailer in good faith or otherwise qualified as a bona fide purchaser.

Defendant's next argument on appeal is that Plaintiffs were required to make a prima facie showing of bad faith by Defendant in order to rescind the sale of the trailer.  However, the only cases cited by Defendant to support this argument pre-date the adoption of the Uniform Commercial Code or involve sales of real property, and in any event, they do not stand for the rule he suggests.  *See, e.g.*, *Land Developers, Inc. v. Maxwell*, 537 S.W.2d 904, 913 (Tenn. 1976) (considering whether reciprocal easements or restrictions upon use may be imposed on real property remaining in the hands of the grantor); *Hewgley v. Gen. Motors Acceptance Corp.*, 286 S.W.2d 355, 359 (Tenn. Ct. App. 1955) (holding that the "complainant failed to carry the burden of proving that he was a bona fide purchaser of the car without notice" without mentioning the term bad faith).  The cited cases are not applicable to the transaction at issue here.  *See Ballard*, 1997 WL 650878, at *2 (involving a sale of goods governed by the UCC and rejecting the plaintiff's reliance on cases pre-dating Tennessee's adoption of the UCC and cases dealing with titles to real property, as such cases "do not apply in this context").

Finally, Defendant argues that "[t]his Court should find that Plaintiffs are estopped from bringing the instant claim against Defendant Elam because Plaintiffs have sat upon their rights and negligently allowed Smith to carry on with the business of Tennessee Materials, creating an actual or apparent authority in Smith to dispose of the trailer in the regular course of business."  From our review of the record, Plaintiffs did not raise an estoppel argument before the trial court, so this issue is waived.  A party may not raise an issue for the first time on appeal.  *In re Estate of Smallman*, 398 S.W.3d 134, 148 (Tenn. 2013); *see also Welch v. Bd. of Prof'l Responsibility*, 193 S.W.3d 457, 465 (Tenn.2006) (citations omitted) ("It has long been the general rule that questions not raised in the trial court will not be entertained on appeal.").

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Danny Elam, and his surety, for which execution may issue if necessary.


_____
BRANDON O. GIBSON, JUDGE

7